1
2
3
4
5
6
7

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  John B. Quinn (Bar No. 090378)
  johnquinn@quinnemanuel.com
  Michael E. Williams (Bar No. 181299)
  michaelwilliams@quinnemanuel.com
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
  Tara Lee (Bar No. 204211)
  taralee@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

8
9
10
11
12

FRASER WATSON & CROUTCH LLP
  Stephen C. Fraser (Bar No. 152746)
  sfraser@fwcllp.com
  Alexander M. Watson (Bar No. 156828)
  awatson@fwcllp.com
100 W Broadway # 650
Glendale, CA 91210
Telephone:   (818) 543-1380
Facsimile:   (818) 543-1389

13
14

*Attorneys for Defendants University of Southern California,*
*Board of Trustees of the University of Southern California*

15
16

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| JANE DOE,<br><br><br>                    Plaintiffs,<br><br>          v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, a California Corporation, BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA, an entity, form unknown; and GEORGE TYNDALL, M.D., an individual, and DOES 1 to 100, inclusive,<br><br>                    Defendants. | Case No:  2:18-CV-09530-SVW-GJS<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6), AND TO STRIKE PUNITIVE DAMAGES CLAIMS PER F.R.C.P. 12(f), ON BEHALF OF DEFENDANTS UNIVERSITY OF SOUTHERN CALIFORNIA AND BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:  Honorable Stephen V. Wilson<br>Dept.:   Courtroom 10A<br>Complaint Filed:  November 9, 2018<br>Trial Date:  None<br>Hearing Date: April 8, 2019<br>Hearing Time: 1:30 p.m. |

18
19
20
21
22
23
24
25
26
27
28

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 8, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 10A of the United States Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Defendants University of Southern California and Board of Trustees of the University of Southern California (collectively "USC"), will move the Court for an order dismissing the First Amended Complaint ("FAC") as against USC based upon Fed. R. Civ. P. 12(b)(6), for the following reasons and on the following grounds:

1. The FAC asserts 16 causes of action: (1) Violation of Title IX; (2) Unruh Act Violation (Civil Code § 51); (3) Sexual Harassment (Civil Code § 51.9); (4) Bane Act Violation (Civil Code §52.1); (5) Gender Violence (Civil Code § 52.4); (6) Sexual Assault; (7) Sexual Battery (Civil Code § 1708.5); (8) Constructive Fraud (Civil Code §1573); (9) Violation of Cal. Ed. Code § 66270; (10) Negligence; (11) Negligence Per Se; (12) Negligent Hiring, Supervision and Retention; (13) Negligent Failure to Warn; (14) Intentional Infliction of Emotional Distress (IIED); (15) Negligent Infliction of Emotional Distress (NIED); and (16) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200).

2. Causes of action 5-7 are not asserted against USC and so are not the subject of this motion.

3. Causes of action 1-4 and 8-16 fail to state a claim against USC because they are barred by applicable statutes of limitations and fail to plead sufficient facts to state viable claims against USC.

Additionally, USC will move the Court for an order dismissing and striking from the FAC the claims for and allegations of entitlement to punitive damages, based upon Fed. R. Civ. P. 12(f) and California Code of Civil Procedure section 425.13.

The claims for and allegations of entitlement to punitive damages which this motion seeks to have dismissed and/or stricken are found at the following portions of the FAC:  ¶ 69, 17:3-9; ¶ 104, 24:13-22; ¶ 109, 25:21-23; ¶ 117, 27:6-12; ¶ 125, 29:8-14; ¶ 152, 35:12-20; ¶¶ 203 to 204, 45:16-25; and in the Prayer at ¶ e, 49:25-27.

The motion is based on this notice, the accompanying memorandum of points and authorities, the Declaration of Michael E. Williams filed concurrently herewith, all pleadings and papers already on file with the Court in this matter, and upon any other matter which may be brought to the attention of the Court at or before the hearing.

This motion is made following extensive meet and confers between counsel pursuant to L.R. 7-3 which began on January 13, 2019, resulted in the filing of the FAC, and continued thereafter.  Although the parties were able to resolve some issues through this process, they could not resolve the issues that are the subject of this motion.

Though each of Plaintiff's claims fails in the instant action, she may be eligible for other relief.  Through a federal class settlement pending this Court's approval in a related set of actions, *In Re USC Student Health Center Litigation*, No. 2:18-CV-04258-SVW (Dkt. 67), USC has pledged to provide up to $215 million to female patients who saw Dr. Tyndall for women's health issues.  Plaintiff meets the definition of a class member and can seek relief in that action.

DATED:  March 8, 2019

| | |
|---|---|
| FRASER WATSON & CROUTCH, LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| By: */s/ Stephen C. Fraser* | By: */s/ Michael E. Williams* |
| STEPHEN C. FRASER<br>ALEXANDER M. WATSON<br>DANIEL K. DIK | JOHN B. QUINN<br>MICHAEL E. WILLIAMS<br>SHON MORGAN<br>TARA LEE |
| Attorneys for Defendants<br>University of Southern California<br>and Board of Trustees of the<br>University of Southern California | Attorneys for Defendants<br>University of Southern California and<br>Board of Trustees of the University of<br>Southern California |

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT .................................................................................. 1

SUMMARY OF ALLEGATIONS .............................................................................. 2

ARGUMENT .............................................................................................................. 3

I.   EACH CLAIM IN THE FAC IS TIME-BARRED UNDER ANY
     APPLICABLE STATUTE OF LIMITATIONS. ............................................. 3

     A.   The FAC's Claims, With the Exception of Bus. & Prof. Code §
          17200, Are Barred By a Two Year Limitations Period. ...................... 4

     B.   The Claims Are Also Time-Barred Under The Statute of
          Limitations for Medical Negligence. .................................................. 6

     C.   The Delayed Discovery Rule Does Not Extend the Statutes of
          Limitations On These Claims. ............................................................. 7

     D.   The FAC Cannot Rely On a Theory of Fraudulent Concealment
          To Toll the Statutes of Limitations On Her Claims. ........................... 9

     E.   The Bus. & Prof. Code § 17200 Claim Is Also Time-Barred .............. 13

II.  TWO CLAIMS ARE BASED ON STATUTES THAT DID NOT
     EXIST WHEN PLAINTIFF WAS EXAMINED BY TYNDALL ................. 13

III. THE FAC DOES NOT ALLEGE FACTS SUFFICIENT TO STATE
     CLAIMS AGAINST USC ............................................................................. 14

     A.   The FAC Does Not Allege That USC Had the Requisite Notice
          or Knowledge to Sustain the Claims Asserted ..................................... 14

IV.  THE PUNITIVE DAMAGES CLAIMS SHOULD BE DISMISSED ........... 19

     A.   California Law Prohibits the Assertion of Punitive Damages
          Against a Health Care Provider Without a Prior Court Order. ............. 23

     B.   CCP § 425.13 Is a Substantive Right That Applies In Federal
          Court. ................................................................................................... 24

CONCLUSION ........................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

2

3

## <u>Cases</u>

4   *Aetna Cas. & Sur. Co. v. IAC,*
    30 Cal. 2d 388 (1947).................................................................................14
5

6   *Allen v. Woodford,*
    No. 1:05-CV-01104-OWW-LJO, 2006 WL 1748587 (E.D. Cal. 2006).........25

7   *Austin B. v. Escondido Union Sch. Dist.,*
    149 Cal. App. 4th 860 (2007)......................................................................16
8

9   *Bureerong v. Uvawas,*
    922 F.Supp. 1450 (C.D. Cal. 1996)..............................................................24

10  *Central Pathology Service Medical Clinic v. Superior Court,*
    3 Cal. 4th 181 (1992).................................................................................24
11

12  *Chaney v. Superior Court,*
    39 Cal. App. 4th 152 (1995)..........................................................................5

13  *ChriMar Systems, Inc. v. Cisco System, Inc.*
    2014 WL 5477666 (N.D. Cal. Oct. 29, 2014)...............................................23
14

15  *Coleman-Anacleto v. Samsung Elecs. Am., Inc.,*
    No. 16-CV-02941-LHK, 2017 WL 86033 (N.D. Cal. Jan. 10, 2017) ...........23

16  *College Hospital, Inc. v. Superior Court,*
    8 Cal. 4th 704 (1994).................................................................................24
17

18  *Cooper v. Superior Court,*
    56 Cal. App. 4th 744 (1997)........................................................................24

19  *Czajkowski v. Haskell & White, LLP,*
    208 Cal. App. 4th 166 (2012)........................................................................9
20

21  *Davis v. Monroe County Board of Education,*
    526 U.S. 629 (1999) ...................................................................................15

22  *Debbie Reynolds Prof. Rehearsal Studios v. Superior Court,*
    25 Cal. App. 4th 222 (1994)..........................................................................6
23

24  *Deirmenjian v. Deutsche Bank, A.G.,*
    526 F. Supp. 2d 1068 (C.D. Cal. 2007).................................................4, 8, 9

25  *Di Genova v. State Board of Education,*
    57 Cal. 2d 167 (1962).................................................................................14
26

27  *Doe v. Roman Catholic Bishop of Sacramento,*
    189 Cal. App. 4th 1423 (2010).......................................................................7

28

-ii-

*Elias v. Navasartian,*
No. 1:15-cv-01567-LJO-GSA-PC, 2017 WL 1013122 (E.D. Cal. 2017)......25

*Estate of Prasad v. County of Sutter,*
958 F. Supp. 2d 1101 (E.D. Cal. 2013)..................................................25

*Evangelatos v. Superior Court,*
44 Cal. 3d 1188 (1988)...................................................................14

*Fox v. Ethicon Endo-Surgery, Inc.,*
35 Cal. 4th 797 (2005)......................................................................8

*Garcia ex rel. Marin v. Clovis Unified Sch. Dist.,*
627 F. Supp. 2d 1187 (E.D. Cal. 2009)...................................20

*Gatto v. County of Sonoma,*
98 Cal. App. 4th 744 (2002)...........................................................5

*Gebser v. Lago Vista Indep. Sch. Dist.,*
524 U.S. 274 (1998).......................................................................15

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.,*
100 F. Supp. 2d 1086 (C.D. Cal. 1999)..................................18

*Graham v. Hansen,*
128 Cal.App.3d 965 (1982)..............................................................7

*Grisham v. Phillip Morris USA, Inc.,*
40 Cal. 4th 623 (2007)....................................................................13

*Guaranty Trust Co. of New York v. York,*
326 U.S. 99 (1945).............................................................................4

*Guerrero v. Gates,*
442 F.3d 697 (9th Cir. 2006)..........................................................12

*Hip Hop Beverage Corp. v. Michaux,*
2016 WL 8578912 (C.D. Cal. Nov. 30, 2016),
*aff'd,* 729 F. App'x 599 (9th Cir. 2018)........................................11

*Jackson v. Birmingham Bd. of Educ.,*
544 U.S. 167 (2005)........................................................................15

*Jackson v. East Bay Hospital,*
980 F. Supp. 1341 (N.D. Cal. 1997) ..............................................25

*Jolly v. Eli Lilly Co.,*
44 Cal. 3d 1103 (1988)...............................................................3, 7, 9

*Juarez v. Boy Scouts of Am., Inc.,*
81 Cal. App. 4th 377 (2000)......................................................20, 21

*Karasek v. Regents of the Univ. of Cal.,*
226 F. Supp. 3d 1009 (N.D. Cal. 2016) ....................................16, 19

-iii-

*Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.,*
    285 F.3d 848 (9th Cir. 2002)................................................................13

*Knowles v. Superior Court,*
    118 Cal. App. 4th 1290 (2004)........................................................6, 7, 9

*Lawson v. Mgmt. Activities, Inc.,*
    69 Cal. App. 4th 652 (1999)................................................................22

*Lukovsky v. City & Cnty. of San Francisco,*
    535 F.3d 1044 (9th Cir. 2008)............................................................12

*Mark K. v. Roman Catholic Archbishop,*
    67 Cal. App. 4th 603 (1998)................................................................12

*McFarland v. Memorex Corp.,*
    493 F. Supp. 631 (N.D.Cal. 1980) ....................................................18

*Melorich Builders, Inc. v. Superior Court,*
    160 Cal. App. 3d 931 (1984)..............................................................22

*Modisette v. Apple Inc.,*
    30 Cal.App.5th 136 (2018), *reh'g denied* (Jan. 9, 2019) ................18

*Mujica v. Occidental Petroleum Corp.,*
    381 F. Supp. 2d 1164 (C.D. Cal. 2005)............................................13

*Nelson v. Gaunt,*
    125 Cal.App.3d 623 (1981) ..................................................................5

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993) ..................................................................18

*Norgart v. Upjohn Co.,*
    21 Cal. 4th 383 (1999)..................................................................4, 7, 9

*Oden v. N. Marianas College,*
    440 F.3d 1085 (9th Cir. 2006) ............................................................15

*Pooshs v. Philip Morris USA, Inc.,*
    51 Cal. 4th 788 (2011)..........................................................................3

*Prakashpalan v. Engstrom, Lipscomb & Lack,*
    223 Cal. App. 4th 1105 (2014)............................................................17

*Quiroz v. Seventh Ave. Center,*
    140 Cal.App.4th 1256 (2006)..............................................................19

*Raisman v. USOC et al.,*
    18-cv-323989 ........................................................................................12

*Rita M. v. Roman Catholic Archbishop,*
    187 Cal. App. 3d 1453 (1986)..................................................4, 5, 10

-iv-

*Roman v. County of Los Angeles*,
   85 Cal. App. 4th 316 (2000)........................................................................6

*Romano v. Wilber Ellis & Co.*,
   82 Cal.App.2d 670 (1947) .........................................................................5

*Sams v. Cty. of Riverside*,
   No. EDCV171848SVWSS, 2018 WL 1474333
   (C.D. Cal. Mar. 26, 2018).......................................................................22

*Stanley v. Trustees of California State Univ.*,
   433 F.3d 1129 (9th Cir. 2006) ..................................................................5

*Stockton Citizens for Sensible Planning v. City of Stockton*,
   48 Cal. 4th 481 (2010)...............................................................................3

*Thomas v. Hickman*,
   No. CV F 06-0215 AWI SMS, 2006 WL 2868967 (E.D. Cal. 2006)............25

*Tindell v. Murphy*,
   22 Cal.App.5th 1239 (2018) ....................................................................17

*Torrance Redev. Agency v. Solvent Coating Co.*,
   763 F.Supp. 1060 (C.D. Cal. 1991).........................................................24

*United States v. Security Industrial Bank*,
   459 U.S. 70 (1982) ..................................................................................14

*In Re USC Student Health Center Litigation*,
   No. 2:18-CV-04258-SVW (Dkt. 67)..........................................................2

*United Western Medical Centers v. Superior Court*,
   *(Michelle H.)*, 42 Cal.App.4th, 500 (1996) .......................................24

*Vizcaino v. Areas USA, Inc.*,
   No. CV 15-417-JFW(PJWX),
   2015 WL 13573816 (C.D. Cal. Apr. 17, 2015)............................................20

*W. Shield Investigations & Sec. Consultants v. Superior Court*,
   82 Cal. App. 4th 935 (2000) ......................................................................5

*Yi v. BMW of N. Am., LLC*,
   No. 2:17-CV-06467-SVW,
   2018 WL 3359016 (C.D. Cal. May 24, 2018) ...............................................9

*Younan v. Equifax Inc.*,
   111 Cal.App.3d 498 (1980).......................................................................17

*Zanze v. Snelling Servs., LLC*,
   412 Fed. Appx. 994 (9th Cir. 2011) .........................................................14

## **Statutory Authorities**

Bus. & Prof. Code § 17200................................................................5, 13, 22, 23

Bus. & Prof. Code § 17208.................................................................5, 13

Cal. Civ. Code § 51.9..........................................................................14

Cal. Civ. Code § 52.1..........................................................................16

Cal. Civ. Code § 52.4..........................................................................14

Cal. Civ. Proc. Code § 335.1...............................................................4, 5

Cal. Civ. Proc. Code § 338(d)..............................................................5

Cal. Civ. Proc. Code § 340(3)..............................................................4

Cal. Civ. Proc. Code § 340.5...............................................................6, 7

Cal. Civ. Proc. Code § 340.16.............................................................5

Cal. Civ. Proc. Code § 425.13.................................................23, 24, 25

Cal. Civ. Proc. Code § 425.13(a).........................................................24

## Rules and Regulations

Fed. R. Civ. P. 9(b).................................................................11, 17, 18

Fed. R. Civ. P. 12(b)(6).......................................................................3

Fed. R. Civ. P. 12(f)...........................................................................24

## Additional Authorities

Restatement (Second) of Agency § 213 (1958).......................................20

MOTION TO DISMISS PER FRCP 12(b)(6) AND TO STRIKE PUNITIVE DAMAGES CLAIMS PER FRCP 12(f)

## MEMORANDUM OF POINTS AND AUTHORITIES
## PRELIMINARY STATEMENT

The allegations in Plaintiff Jane Doe's First Amended Complaint (the "FAC") describe her experience during a single gynecological examination with Dr. George Tyndall that took place nearly 30 years ago in March 1991.  The FAC alleges that Dr. Tyndall was unnecessarily aggressive when conducting his pelvic examination of Plaintiff and that he made grossly inappropriate comments to her during the exam.   The FAC specifically alleges that "[Plaintiff] sensed that Dr. Tyndall's examination was more about his own personal enjoyment than anything helpful for her."   FAC ¶ 5.   According to the FAC, Plaintiff was aware, in 1991, that Dr. Tyndall's actions and statements were inappropriate.   For purposes of this motion to dismiss, the factual allegations of the FAC must be accepted as true.

The allegations of the FAC fail to state actionable claims against Defendants University of Southern California and the University's Board of Trustees (collectively, "USC").  Based on the allegations and admissions contained in the FAC, all claims against USC are barred by the applicable statutes of limitations. The longest statute of limitations for any of the claims is four years, meaning that, for any claim to be timely, this action must have been filed no later than March, 1995.   Though the FAC alleges Plaintiff was aware in 1991 that Dr. Tyndall's conduct was inappropriate, Plaintiff did not bring this suit for *27 years*, long after the relevant statutes of limitations had expired on all asserted claims.

Moreover, the FAC fails to state actionable claims against USC.  Each of the claims asserted requires that USC have had prior actual or constructive knowledge of Dr. Tyndall's inappropriate conduct and that USC have failed to take action despite such knowledge, resulting in Plaintiff's injury.  The FAC specifically alleges that it was not until the early 2000s when USC first received complaints about inappropriate touching and remarks by Dr. Tyndall.  FAC ¶ 12.  Based on these allegations, the FAC does not establish that USC was on notice of Dr. Tyndall's

alleged inappropriate conduct at the time of Plaintiff's examination in March, 1991. Further, two of the asserted claims should be dismissed because they are based on statutes that did not exist in 1991 and which do not apply retroactively.

Given that the allegations in the FAC relate to events occurring nearly 30 years ago, the policies served by statutes of limitations – such as the unavailability of documents and witnesses and difficulty defending against stale claims – are of critical importance here.  Though each of the asserted claims against USC in the instant action should fail as a matter of law, this motion does not preclude Plaintiff from participating in the $215 million proposed class action settlement, which provides relief for class members even if their claims are arguably barred by the statute of limitations.  The settlement is pending this Court's approval in *In Re USC Student Health Center Litigation*, No. 2:18-CV-04258-SVW (Dkt. 67).

## SUMMARY OF ALLEGATIONS

According to the FAC, Plaintiff had a single gynecological exam with Dr. Tyndall that took place in March 1991.  FAC ¶ 2.  The FAC alleges that "Dr. Tyndall molested, sexually abused, and sexually harassed her, including but not limited to by an unnecessarily aggressive inspection of Ms. Doe's private parts. Dr. Tyndall also made grossly inappropriate remarks during his examination."  FAC ¶ 3.  The FAC further alleges that Dr. Tyndall "felt her breasts, put his fingers inside her vagina and anus, and aggressively moved first his fingers, and then a speculum around inside her."  FAC ¶ 5.  The FAC also alleges that during this exam, Dr. Tyndall "remarked 'You are such an idiot-don't you know it's not a black hole? Haven't you had sex before?' and words to that effect."  FAC ¶ 6.  The FAC explicitly asserts that "[plaintiff] *sensed* that Dr. Tyndall's examination was more about his own personal enjoyment than anything helpful for her."  FAC ¶ 5.  The FAC does not allege any further interaction with Dr. Tyndall after this single exam.

The FAC also alleges that "In the early 2000s, at least three patients submitted letters complaining about inappropriate touching and remarks."  FAC ¶ 12.  Although the FAC goes on to make a number of allegations regarding complaints about Dr. Tyndall from others, there are no allegations of complaints concerning inappropriate touching or remarks prior to Plaintiff's exam in March 1991.  The FAC also alleges that Defendants "suppressed and concealed the true facts regarding Dr. Tyndall" from Plaintiff (FAC ¶ 138), however, there are no allegations that USC was aware, before March, 1991, of any complaints regarding Dr. Tyndall sexually harassing or abusing anyone.

## ARGUMENT

### I.   EACH CLAIM IN THE FAC IS TIME-BARRED UNDER ANY APPLICABLE STATUTE OF LIMITATIONS.

As the California Supreme Court has explained, "[a]mong the purposes of statutes of limitations are to prevent stale claims, give stability to transactions, protect settled expectations, promote diligence, encourage the prompt enforcement of substantive law, and reduce the volume of litigation."  *Stockton Citizens for Sensible Planning v. City of Stockton*, 48 Cal. 4th 481, 499 (2010).  "Thus, statutes of limitations are not mere technical defenses, allowing wrongdoers to avoid accountability."  *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011).  Statutes of limitation "serve[] the important function of repose by allowing defendants to be free from stale litigation, especially in cases where evidence might be hard to gather due to the passage of time."  *Jolly v. Eli Lilly Co.*, 44 Cal.3d 1103, 1117 (1988).  Given that the allegations in the FAC relate to events that occurred nearly 30 years ago, the concerns related to missing documents, unavailability of witnesses, and the ability to defend against stale claims are particularly apt here.  "A complaint is properly dismissed under Rule 12(b)(6) where it is apparent on the face of the pleading that plaintiff's claims are barred by the statute of limitations."  *Deirmenjian v. Deutsche Bank, A.G.*, 526 F. Supp. 2d 1068, 1073 (C.D. Cal. 2007).

As explained below, the shortest cause of action for any of the asserted claims is one year, while the longest is four years.  Thus, all of the asserted claims were time barred as of March 1995.  For the Court's convenience, attached as Ex. A to the Declaration of Michael E. Williams is a chart summarizing the applicable statutes of limitations for each claim asserted against USC, which are discussed below.[1]

>   A.   The FAC's Claims, With the Exception of Bus. & Prof. Code § 17200, Are Barred By a Two Year Limitations Period.

"The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises....'"  *Norgart v. Upjohn Co.* 21 Cal.4th 383, 397-399 (1999).  California has a two year statute of limitations period that applies to "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."  Cal. Code of Civ. Proc. ("CCP") § 335.1.[2]  As the Court explained in *Rita M. v. Roman Catholic Archbishop*, this general personal injury limitations period (previously CCP § 340(3)) "embraces not only bodily injuries but all infringements of personal rights as opposed to property rights." 187 Cal. App. 3d 1453, 1460 (1986) (causes of action for civil conspiracy, negligence, fraud and deceit, professional malpractice, deceit, and clergy malpractice all were governed by the general personal injury statute of limitations (then §340(3)), now §335.1.)  Therefore, this two year statute of limitations applies to all of the claims in the FAC with the exception of Plaintiff's sixteenth cause of action for injunctive relief pursuant to Cal. Bus. & Prof. Code § 17200, which has a four year statute of limitations period.  Cal. Bus. & Prof. Code § 17208.[3]

---

[1]   Plaintiff's claims 5-7 are not directed at USC, and so are not addressed here.

[2]   Because statutes of limitations are substantive, California law applies in the instant action. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945).

[3]   The California Legislature recently enacted CCP § 340.16 which provides a statute of limitations period of ten years for claims of sexual assault, however, this

(footnote continued)

-4-

This two year statute of limitations period applies to the statutory claims against USC for violation of Title IX, the Unruh Act, the Bane Act, and the statutory prohibition of sexual harassment (Claims 1-4).  *See Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1135–36 (9th Cir. 2006) (applying California general personal injury statute to Title IX claim); *Gatto v. County of Sonoma*, 98 Cal.App.4th 744, 760 (2002) (applying general personal injury statute of limitations to claims under Unruh and Bane Acts).  This two year limitations period also applies to the claim alleging sexual abuse or harassment under the Education Code (Claim 9).  *W. Shield Investigations & Sec. Consultants v. Superior Court*, 82 Cal.App.4th 935, 953 (2000) (sexual harassment and interference with civil rights claim governed by personal injury limitations period).  *See* Williams Decl., Ex. A.

The claim for constructive fraud (Claim 8) is based upon and seeks damages for personal injuries; thus, it is governed by the two year general personal injury statute in CCP § 335.1.  *Rita M.*, 187 Cal.App.3d at 1460 (fraud claim seeking damages for personal injuries arising from molestation by priest was subject to and barred by personal injury statute of limitations).  While this claim has, at most, a three year statute of limitations (based upon delayed discovery (discussed below)), CCP §338(d), the claim is nevertheless time-barred by twenty four years.  *See Nelson v. Gaunt*, 125 Cal.App.3d 623, 636 (1981); *Romano v. Wilber Ellis & Co.*, 82 Cal.App.2d 670, 674 (1947).

Similarly, Plaintiff's negligence claims (Claims 10-13) are governed by the two year general personal injury limitations period.  *See Chaney v. Superior Court*, 39 Cal.App.4th 152, 155-156 (1995) (applying then one year personal injury statute of limitations to action for negligent supervision against employer of molester of minor rather than extended statute for minor sex abuse); *Debbie Reynolds Prof. Rehearsal Studios v. Superior Court*, 25 Cal.App.4th 222, 232-233 (1994) (applying

provision only applies to actions "commenced on or after January 1, 2019."  As such, it is inapplicable to this action which was commenced on November 9, 2018.

then one-year statute to the employer of an alleged abuser who was sued for his alleged direct negligence in hiring, supervising, and retaining the abuser).

Finally, Plaintiff's emotional distress claims (Claims 14-15) are also governed by the two year statute of limitations.  *See Roman v. County of Los Angeles*, 85 Cal.App.4th 316, 323 (2000).

Plaintiff's sole exam by Dr. Tyndall, upon which this *entire* action is based, occurred in 1991.  Her initial complaint was filed in 2018, 25 years after the two year statute of limitations period expired.  Thus, these claims are time-barred.

B.   The Claims Are Also Time-Barred Under The Statute of Limitations for Medical Negligence.

Because Plaintiff's alleged injuries occurred in the context of a medical examination, the claims are also time-barred under CCP §340.5, which is the relevant statute of limitations for an action based upon medical negligence.

CCP §340.5 is a two-pronged statute, with a limitations period of one or three years:  "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of [an] action shall be *three years after the date of injury* or *one year after the plaintiff discovers*, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first."  (Emphasis added).  For the limitations period under CCP §340.5 to commence, "a person need not *know* of the actual negligent cause of an injury; mere *suspicion* of negligence suffices to trigger the limitation period."  *Knowles v. Superior Court*, 118 Cal.App.4th 1290, 1295 (2004) (wrongful death claim based on medical negligence as to decedent was barred by the one year statute of limitations due to suspicion of negligence, and plaintiffs could not rely upon date of later expert consultant's report) (emphasis in original), *citing Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397–398 (1999); *Jolly*, 44 Cal.3d at 1110–1111.

Here, the FAC alleges that in March 1991, Plaintiff sensed Dr. Tyndall's examination was inappropriate at the time, thereby triggering the statute of

limitations period under CCP § 340.5.  FAC ¶¶ 5-6.  Thus, these claims were time-barred as of March 1992, or at the latest March 1994, to the extent CCP § 340.5's three year prong arguably applied.

C.  The Delayed Discovery Rule Does Not Extend the Statutes of Limitations On These Claims.

The FAC cannot rely on the "delayed discovery rule" to avoid application of the limitations periods.  "A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her."  *Jolly*, 44 Cal.3d at 1109; *Doe v. Roman Catholic Bishop of Sacramento*, 189 Cal.App.4th 1423, 1432-1433 (2010) (child molestation case time-barred due to lack of any diligent investigation by plaintiff) ("Because she did not diligently investigate—she did not investigate at all—she cannot now rebut the presumptive knowledge she had nearly 20 years ago of the abuse.").  As the California Supreme Court has explained, "the limitations period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry . . . .  A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery."  *Jolly*, 44 Cal.3d at 1110-1111.  A plaintiff only needs a "suspicion of wrongdoing" to trigger the limitations period:  "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."  *Id.* at 1111 (emphasis added); *see also Norgart*, 21 Cal.4th at 397-398; *Knowles*, 118 Cal.App.4th at 1298-1300.  Further, ignorance of the legal theory supporting a claim is irrelevant for statute of limitations accrual. *Graham v. Hansen,* 128 Cal.App.3d 965, 972 (1982) ("[t]he statute of limitations is not tolled by belated discovery of legal theories, as distinguished from belated discovery of facts.").

The FAC's allegations indicate that Plaintiff had at least a "suspicion of wrongdoing" in 1991 to put her – and any other reasonable person – on inquiry notice.  The FAC alleges that during Plaintiff's only gynecological exam with

Dr. Tyndall, he "molested, sexually abused, and sexually harassed her, including . . . unnecessarily aggressive inspection of [her] private parts."  FAC ¶¶1-3.  The FAC alleges that during this gynecological exam, "Tyndall felt her breasts, put his fingers inside her vagina and anus, and aggressively moved first his fingers, and then a speculum around inside her."  FAC ¶ 5.  The FAC further alleges that Dr. Tyndall called her an idiot during the exam as to her knowledge of her own anatomy,  FAC ¶6, and that Dr. Tyndall's remarks during the examination were "grossly inappropriate," FAC ¶ 3.  The FAC concedes that during the exam Plaintiff "sensed that Dr. Tyndall's examination was more about his own personal enjoyment than anything helpful for her."  FAC ¶5.  Thus, Plaintiff had at least a "suspicion of wrongdoing" in March 1991 and was on inquiry notice to further investigate any potential claims stemming from this examination.

The FAC alleges no facts that would support application of the delayed discovery rule to delay accrual of the statute of limitations.  "A plaintiff whose complaint shows on its face that [her] claim would be time-barred absent application of the discovery rule 'must plead that, despite diligent investigation of the circumstances of the injury, [] she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period.'"  *Deirmenjian*, 526 F. Supp. 2d at 1092, *citing Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).   In other words, "plaintiff must plead specific facts showing (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Deirmenjian*, 526 F. Supp. 2d at 1092.  In pleading such facts, "[t]he burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer."  *Czajkowski v. Haskell & White, LLP*, 208 Cal. App. 4th 166, 175 (2012) (affirming demurrer where plaintiff did not sufficiently plead facts to support application of discovery rule).

The FAC alleges that Plaintiff "recently read a news article in the Los Angeles Times about Defendants USC, the Board, and Dr. Tyndall that brought

forth the realization that she had been betrayed and violated by the very institution that she once had much pride in, and the horror of the reality of Dr. Tyndall's 'medical care' set in."   FAC ¶ 7.   This allegation is insufficient to invoke the delayed discovery rule.   "[T]he *Jolly* court rejected the notion that a plaintiff must have knowledge of specific facts establishing misconduct in order to discover a cause of action."   *Knowles*, 118 Cal.App.4th at 1296.   The relevant inquiry is whether the plaintiff "'suspects . . . that someone has done something wrong to' him, 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding.'"   *Norgart*. 21 Cal.4th at 397-98 (*citing*, *Jolly*, 44 Cal.3d at 1110, fn 7).   The FAC alleges that during a single gynecological exam in 1991, Plaintiff suspected Dr. Tyndall did something wrong to her.[4]   Elsewhere, the FAC alleges that when Plaintiff read the article in the LA Times in 2018, she had a "recurrences" of her injuries, indicating a past awareness of the alleged injuries at the time of the examination.   FAC ¶ 151.   Moreover, the FAC does not allege any specific facts demonstrating the "inability to have made earlier discovery despite reasonable diligence," as required to invoke the delayed discovery rule. *Deirmenjian*, 526 F. Supp. 2d at 1092.

> D.   The FAC Cannot Rely On a Theory of Fraudulent Concealment To Toll the Statutes of Limitations On Her Claims.

The FAC's assertions of fraudulent concealment to avoid the statutes of limitations are similarly unavailing.   The FAC alleges that even though Plaintiff "sensed" Dr. Tyndall's conduct was wrong at the time, FAC ¶ 5, and that his

---

[4]   Reading a publication or being externally apprised of the existence of a claim does not constitute delayed discovery where plaintiff was previously on notice of her injuries, as Plaintiff was here. *See Yi v. BMW of N. Am., LLC*, No. 2:17-CV-06467-SVW, 2018 WL 3359016, at *3, *6-7 (C.D. Cal. May 24, 2018) (dismissing claim on summary judgment based on statute of limitations; plaintiff could not demonstrate delayed discovery by claiming he only discovered his injury when law firm sent him letter about common problems with BMWs, where plaintiff admitted "he experienced problems with the Vehicle 'from the time [he] got this car.'" ).

comments were "grossly inappropriate," FAC ¶ 3, Dr. Tyndall allegedly "deliberately misled" her and "concealed the existence" of her claims, FAC ¶¶ 5, 55, and that such fraudulent concealment is imputed to USC. FAC ¶ 59. The FAC also claims that USC "affirmatively concealed Dr. Tyndall's propensity to sexually abuse female patients and his past sexual abuse," FAC ¶ 56, and that the University "implemented various measures to conceal Tyndall's actions," which "actions and inactions… constituted fraudulent concealment." FAC ¶¶ 57-58. These allegations are insufficient for a number of reasons.

*First*, the FAC's admission that, during the exam, "[Plaintiff] sensed that" Dr. Tyndall's conduct was inappropriate, FAC ¶ 5, means that Plaintiff was aware of her alleged injuries *at the time of the exam*. Furthermore, the FAC alleges that Dr. Tyndall made "grossly inappropriate" remarks during the exam—which further evidences that Plaintiff was aware of their improper nature at the time. FAC ¶ 3. Such awareness placed Plaintiff on inquiry notice of her potential claims; therefore no valid claim of concealment can be made. As California's Court of Appeal has explained, "we pause to note an obvious, albeit often overlooked, proposition. The doctrine of fraudulent concealment for tolling the statute of limitations does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *Rita M. v. Roman Catholic Archbishop*, 187 Cal.App.3d 1453, 1460 (1986). Because Plaintiff had a reasonable suspicion of her claims in 1991, she cannot, as a matter of law, rely on fraudulent concealment to extend the statute of limitations.

*Second*, the FAC does not allege fraudulent concealment with the required specificity. Fed. R. Civ. P. 9(b) requires that any allegations of fraud be pled "with particularity," including assertions of fraudulent concealment. *See Hip Hop Beverage Corp. v. Michaux*, 2016 WL 8578912, at *5 (C.D. Cal. Nov. 30, 2016), *aff'd*, 729 F. App'x 599 (9th Cir. 2018) ("The Ninth Circuit has previously held that a claim that fraudulent concealment tolls an applicable state statute of limitations

must be pled with particularity under Rule 9(b) … ") (internal citations omitted). Moreover, "[u]nder Rule 9(b), fraud allegations must include the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Id.* (internal citations omitted).

That standard of particularity is not met here. The FAC includes only conclusory assertions that Dr. Tyndall "misled" Plaintiff and "concealed" her claims by generally "misrepresenting that his conduct was for a legitimate medical purpose[,]" FAC ¶¶ 5, 55. These assertions lack any factual specificity. As to USC, the FAC claims that the University "affirmatively concealed Dr. Tyndall's propensity to sexually abuse female patients and *his past sexual abuse*," FAC ¶ 56, and "implemented various measures to conceal Tyndall's actions, including permitting him to remain in a position of authority and trust, scheduling patients for gynecological examinations with him, granting him unfettered and unsupervised access to patients, holding him out as a trustworthy physician, and *failing to disclose the prior misconduct to patients*." FAC ¶ 57 (emphasis added). These assertions are likewise bereft of any specificity. Not only are the allegations conclusory, but the FAC contains none of the required allegations of "time, place, and specific content" required by Rule 9(b). Moreover, based on the allegations of the FAC, USC was not on notice of any alleged misconduct until the early 2000s, FAC ¶ 12, and so could not have known about any "past sexual abuse" or "prior misconduct" in 1991.[5]

---

[5]   Oddly, both the initial complaint *and* the FAC reference the "gymnastics community." Orig. Compl. ¶ 132; FAC ¶ 138. Although not necessary to decide this motion, it appears that the allegations in the FAC borrowed heavily from the complaint filed by gymnast Aly Raisman against Dr. Larry Nassar and the US Olympic Committee, which involved very different facts, including that the USOC was alleged to have had actual notice well before the events giving rise to Ms. Raisman's claims. *See* Williams Decl., Ex. B (redline between relevant portions of Plaintiff's FAC and complaint in *Raisman v. USOC et al.*, 18-cv-323989). This may explain the incongruous assertions in the FAC in this action that USC was on "notice" at the time of Plaintiff's exam in 1991.

*Finally*, the FAC's allegations of fraudulent concealment fail because they are coextensive with the facts alleged in support of the claims against USC which the FAC asserts were concealed. As the Ninth Circuit has recognized, "fraudulent concealment[] halts the statute of limitations when there is active conduct by a defendant, *above and beyond the wrongdoing upon which the plaintiff's claim is filed*, to prevent the plaintiff from suing in time." *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006) (emphasis added).  The substantive wrong cannot be merged with the tolling doctrine, thus the basis for fraudulent concealment must be separate from the cause of action.  *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008).  The case of *Mark K. v. Roman Catholic Archbishop*, 67 Cal. App. 4th 603 (1998) is instructive.  In that case, a plaintiff sued the Catholic Church for negligent supervision/retention and fraud. Plaintiff alleged that as a child, he had been molested by the priest, the Church had been aware of prior accusations against the priest, and that the Church had taken no action. Plaintiff attempted to rely on fraudulent concealment to toll the statute of limitations.  The Court of Appeal affirmed judgment sustaining a demurrer without leave to amend. With respect to fraudulent concealment, the court explained:

> "[t]he wrongful conduct alleged against the church was its inaction in the face of the accusations against Father Llanos. Thus, what the church failed to disclose was merely evidence that the wrong had been committed.  If plaintiff's approach were to prevail, then any time a tortfeasor failed to disclose evidence that would demonstrate its liability in tort, the statute of limitations would be tolled under the doctrine of concealment.  Regardless of whether the issue is characterized as fraud by concealment or equitable estoppel, this is not the law."

*Id.* at 613.

Here, the FAC does not allege that USC was aware of accusations against Dr. Tyndall until a decade after Plaintiff saw him.  FAC ¶ 12.  The claims against USC are based on allegations that USC was aware of Dr. Tyndall's misconduct but failed to take appropriate action to remove him, instead, allowing Dr. Tyndall to continue seeing patients, scheduling patients for him, holding him out as

trustworthy, and failing to disclose Dr. Tyndall's misconduct. FAC ¶ 57. These allegations, pled in support of fraudulent concealment, are the same allegations on which the underlying claims against USC are based.[6]  The FAC's failure to identify any affirmative acts of concealment that are "above and beyond" the facts supporting the underlying claims against USC defeats the fraudulent concealment theory.

E.   The Bus. & Prof. Code § 17200 Claim Is Also Time-Barred.

The sixteenth cause of action for an injunction under the California Unfair Business Practices Act (Bus. & Prof. Code § 17200 *et seq.*) is barred by that statute's four year limitations period. California Business & Professions Code § 17208; *Grisham v. Phillip Morris USA, Inc.*, 40 Cal.4th 623, 639 (2007). Moreover, "the delayed discovery rule does not apply to § 17200 claims." *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1164, 1185 (C.D. Cal. 2005); *see also*, *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (noting that time ran from date claim accrued, not when injury was discovered); *Zanze v. Snelling Servs., LLC*, 412 Fed. Appx. 994, 996 (9th Cir. 2011).

II.   TWO CLAIMS ARE BASED ON STATUTES THAT DID NOT EXIST WHEN PLAINTIFF WAS EXAMINED BY TYNDALL.

The FAC asserts two statutory claims that did not exist in 1991, and neither applies retroactively.  The third cause of action is brought under Cal. Civil Code § 51.9, which was enacted in 1994.  (Stats. 1994 ch. 710.)  And the fifth cause of action is brought under Cal. Civil Code § 52.4, which was enacted in 2002.  (Stats. 2002 ch. 842 (AB 1928).)

---

[6]   *See, e.g.*, Title IX violations, FAC ¶¶ 66-67; Unruh Act violations, FAC ¶¶ 75-76; sexual harassment, FAC ¶ 87; Bane Act violations, FAC ¶ 96; constructive fraud, FAC ¶¶ 127-149; negligence, FAC ¶¶ 160-162; negligence per se, FAC ¶¶ 165-168; negligent hiring, supervision, and retention, FAC ¶¶ 181-189; negligent failure to train, warn or educate, FAC ¶¶ 193-194; intentional infliction of emotional distress, FAC ¶¶ 199-200; negligent infliction of emotional distress, FAC ¶ 209; and unfair business practices, FAC ¶¶ 27-219.

Statutes are presumed to apply prospectively, rather than retroactively. *See Aetna Cas. & Sur. Co. v. IAC*, 30 Cal.2d 388, 392 (1947) ("the law in force at the time of the injury is to be taken as the measure of the injured person's right of recovery."); *Evangelatos v. Superior Court*, 44 Cal.3d 1188, 1208 (1988) ("legislative provisions are presumed to operate prospectively"); *United States v. Security Industrial Bank*, 459 U.S. 70, 79 (1982) ("[T]he first rule of construction is that legislation must be considered as addressed to the future, not to the past."). For a statute to apply retroactively, the Legislature must plainly say so. "A retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be the unequivocal and inflexible import of the terms, and the manifest intention of the legislature." *Id*. (internal citations omitted); *Aetna*, 30 Cal.2d at 393 ("statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent.").

The FAC points to nothing in the language of these statutes or their legislative history evidencing a clear legislative intent to apply them retroactively. *See also Di Genova v. State Board of Education*, 57 Cal.2d 167 (1962) (legislation prohibiting employing in public schools persons convicted of certain sex offenses did not apply retroactively because the Legislature did not declare it retroactive).

The third and fifth causes of action are based on statutes that were not enacted until years after the incident in question and these statutes do not apply retroactively. Thus, these claims should be dismissed as well.

III.   THE FAC DOES NOT ALLEGE FACTS SUFFICIENT TO STATE CLAIMS AGAINST USC.

A. The FAC Does Not Allege That USC Had the Requisite Notice or Knowledge to Sustain the Claims Asserted.

Also fatal to many of the claims here is the absence of plausible facts supporting the FAC's conclusory contention that USC knew, had reason to know, or had any notice of, Dr. Tyndall's alleged misconduct *prior to or at the time of*

-14-

*Plaintiff's alleged injuries*, which is essential to the claims against USC.  Plaintiff's sole visit with Dr. Tyndall was in 1991 and allegedly included inappropriate touching and remarks.  FAC ¶¶ 2, 5-6.  But the FAC alleges that the first complaints to USC about Dr. Tyndall which also involved inappropriate touching or remarks were not made until "the early 2000s" (FAC ¶ 12), a decade later.

1.  <u>Title IX (Claim 1): The FAC Does Not Allege Facts Supporting Any Actual Notice to or Deliberate Indifference by USC</u>.

Title IX prohibits sex discrimination by "recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).  The Supreme Court has stated that "Title IX's enforcement scheme … depends on individual reporting because <u>individuals … may not bring suit under the statute unless the recipient has received '*actual notice*' of the discrimination</u>." *Id.* at 181 (emphasis added); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) (student could not recover for sexual harassment by teacher unless an official of the district had actual notice of and was deliberately indifferent to the misconduct); *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).  Thus, a claim under Title IX must allege facts establishing "actual notice" and "deliberate indifference." *See Oden v. N. Marianas College*, 440 F.3d 1085, 1088-1090 (9th Cir. 2006); *Karasek v. Regents of the Univ. of Cal.*, 226 F. Supp. 3d 1009, 1012 (N.D. Cal. 2016) ("In order to state a claim under Title IX, the school's response to the assaults has to be 'clearly unreasonable,' amounting to 'an official decision not to remedy the violation.'").

The Title IX claim fails because the FAC alleges no facts that would establish "actual notice" and "deliberate indifference" by a USC official at the time of Plaintiff's exam in 1991.  To the contrary, the FAC alleges the first complaint to *anyone* about the conduct at issue was in the early 2000s.

2.  <u>Bane Act (Claim 4): The FAC Does Not Allege Facts That USC Interfered With Rights By Threat, Intimidation or Coercion</u>.

The Bane Act, codified at Cal. Civ. Code § 52.1, creates a cause of action for an individual whose rights pursuant to state or federal law have been "interfere[d with] by *threat, intimidation, or coercion*." (emphasis added). The FAC claims that Plaintiff "had a right to have Defendant USC respond immediately and investigate her [visit with] . . . Dr. Tyndall," FAC ¶ 95, but the FAC does not allege that Plaintiff ever complained or notified anyone, including USC, about her experience with Dr. Tyndall. USC could not have immediately responded to or investigated the complaints if the incident was never reported.

Furthermore, the Bane Act requires a showing that "the defendant, *by the specified improper means (i.e., 'threats, intimidation or coercion')*, tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or force the plaintiff to do something he or she was not required to do." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal.App.4th 860, 883 (2007) (granting nonsuit on Bane Act claim because "a defendant is liable if he [] interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion" and "there is no evidence of acts that could be construed as threats, violence or intimidation that actually caused a loss of [plaintiffs'] right to an education…"). None of the acts or omissions alleged against USC constitute the "specified improper means" the Bane Act requires.

### 3. Constructive Fraud (Claim 8): The FAC Does Not Allege that USC Had the Notice or Intent to Deceive Her.

The constructive fraud claim likewise fails because it is not pled with specificity, and because the FAC makes plain that USC could not have had the requisite intent to deceive Plaintiff at the time of her examination.

"Constructive fraud 'arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice.'" *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal.App.4th 1105, 1131 (2014). Thus, the elements of constructive fraud cause of action are

1  "(1) a fiduciary or confidential relationship; (2) nondisclosure (breach of fiduciary

2  duty); (3) intent to deceive, and (4) reliance and resulting injury (causation)." *Id.*;

3  *Younan v. Equifax Inc*., 111 Cal.App.3d 498, 516, fn. 14 (1980).

4        Based on the allegations in the FAC, USC cannot have engaged in breach by

5  "nondisclosure," nor can it have had "intent to deceive" as to Plaintiff in 1991—the

6  second and third elements of constructive fraud—given that the FAC alleges USC

7  only received complaints of inappropriate touching and remarks in the early 2000s.

8  FAC ¶ 12.   Nor does the FAC sufficiently plead justifiable reliance—another

9  element of this claim.  The FAC asserts that, "[h]ad Plaintiff known the true facts

10  about  Dr.  Tyndall,  she  would  have  not  participated  further  in  activities  of

11  Defendants, or continued to financially support Defendants' activities." FAC ¶ 140.

12  But the FAC does not allege facts indicating that USC was aware of any misconduct

13  by Dr. Tyndall before March 1991, when Plaintiff saw him.  The FAC also contains

14  no allegations that USC made misrepresentations to her before March 1991 on

15  which she justifiably relied by seeing Dr. Tyndall on that single occasion.

16        Further, this claim must be plead with specificity, as with any other fraud

17  claim.  Fed. R. Civ. P. 9(b); *Tindell v. Murphy*, 22 Cal.App.5th 1239, 1250 (2018)

18  ("Like an action for fraud, constructive fraud must be pled with specificity.").  Thus,

19  "the complaint must specify such facts as the times, dates, places, and benefits

20  received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*,

21  6 F.3d 666, 672 (9th Cir. 1993).  Further, "a pleader must identify the individual

22  who made the alleged representation and the content of the alleged representation."

23  *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1094 (C.D.

24  Cal. 1999).  Bare assertions of fraud do not satisfy Fed. R. Civ. P. 9(b).  A plaintiff

25  cannot base fraud allegations on blanket references to defendants, but must allege

26  specifics as to each defendant. *McFarland v. Memorex Corp.,* 493 F.Supp. 631, 639

27  (N.D.Cal. 1980) (fraud allegations may not rely on blanket references to conduct of

28

"defendants," but must inform each defendant of the conduct with which he individually is charged).

These standards are not met here.  The FAC merely makes generalized and conclusory assertions that USC knowingly breached its duties by misrepresenting, suppressing, or concealing facts about Dr. Tyndall.  FAC ¶¶130-148.  But the FAC does not indicate what specific acts any specific person at USC took to allegedly "misrepresent," "suppress," or "conceal" facts about Dr. Tyndall from Plaintiff, particularly prior to or at the time of her visit in 1991.  The FAC's conclusory assertions are insufficient to satisfy Fed. R. Civ. P. 9(b).

4.  <u>Negligence (Claims 10-13): The FAC Does Not Allege Notice Requisite for Negligence Claims.</u>

The FAC asserts four causes of action based on a theory of negligence.  FAC ¶¶ 157-195 (Claims 10-13).  A plaintiff alleging negligence must establish "a legal duty to use due care, a breach of such legal duty, and that the breach is the proximate or legal cause of the resulting injury."  *Modisette v. Apple Inc.*, 30 Cal.App.5th 136, 215 (2018), *reh'g denied* (Jan. 9, 2019).  As explained below, each of these claims fails because the FAC does not allege facts to support the conclusory contention that USC was on notice of Dr. Tyndall's alleged misconduct at the relevant time and failed to take appropriate action.[7]

(a)  <u>Negligence (Claim 10): The FAC Does Not Allege Facts Establishing USC's Notice of Foreseeable Harm At The Time of Plaintiff's Examination.</u>

The FAC asserts that USC had a "special duty" to "protect and warn" her against Dr. Tyndall, and alleges that USC breached that duty by "concealing from

---

[7] The FAC asserts a claim for negligence per se (Claim 11); however, negligence per se is merely an evidentiary doctrine and not an independent cause of action. *Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1285 (2006) ("Accordingly to apply negligence per se is not to state an independent cause of action.  The doctrine does not provide a private right of action for violation of a statute.").

Plaintiff … that Dr. Tyndall was sexually harassing, molesting, and abusing patients," and "failing to investigate or otherwise confirm or deny such facts of sexual abuse by Dr. Tyndall." FAC ¶¶ 159-161.

To sustain a cause of action based on a breach of a University's duty to protect a student, the plaintiff must demonstrate that the University was on *notice* of a *foreseeable* threat. *Regents of University of California*, 4 Cal.5th 607, 631, 634 ("[universities] have a duty to act with reasonable care when aware of a foreseeable threat of violence in a curricular setting"; "When circumstances put a school on notice that a student is at risk to commit violence against other students, the school's failure to take appropriate steps to warn or protect foreseeable victims can be causally connected to injuries the victims suffer as a result of that violence").

The FAC asserts that "*[p]rior to and after* the first incident of Dr. Tyndall's molestation, sexual assault, sexual abuse, and/or sexual harassment *of Plaintiff*, through the present, Defendants, knew and/or should have known that Dr. Tyndall had and was capable of … abusing and harassing *Plaintiff* or other victims" (FAC ¶ 158). The FAC, however, alleges no facts that did, or should have, put USC on notice that Dr. Tyndall presented a foreseeable threat to her or others in or before 1991. This failure is fatal to the negligence claim.

> (b)     Negligent Hiring/Supervision/Retention (Claim 12): The FAC Does Not Allege Facts Supporting The Requisite Notice by USC Before 1991.

The missing element of notice also defeats the negligent retention and supervision claims. An employer is not liable for negligent supervision or retention of an employee unless the employer knows or should have known that the employee is likely to harm others. The standard for liability generally tracks Section 213 of the Restatement Second of Agency:

> The principal may be negligent because he has *reason to know* that the servant or other agent, because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him. . . . Liability results

under the rule stated in this Section, . . . because the employer *antecedently had reason to believe* that an undue risk of harm would exist because of the employment. . . .

Restatement (Second) of Agency § 213, com. (d) (1958) (emphasis added). Put another way, "an employer's duty ... is breached only when the employer knows, or should know, facts which would warn a reasonable person that the employee presents an undue risk of harm . . ." *Vizcaino v. Areas USA, Inc.*, No. CV 15-417-JFW (PJWX), 2015 WL 13573816, at *7 (C.D. Cal. Apr. 17, 2015).

Thus, "there can be no liability for negligent supervision in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised." *Juarez v. Boy Scouts of Am., Inc.*, 81 Cal. App. 4th 377, 395 (2000) (internal citations omitted); *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1207 (E.D. Cal. 2009) (dismissing claims of negligent supervision as to time period during which plaintiff "makes no allegations to show that [defendant] had knowledge that [employees] could not be trusted without supervision."). Here, the FAC does not allege any facts that would support a claim against USC for negligent retention or supervision of Dr. Tyndall as of March 1991, two years after he started, based on complaints which the FAC contends USC only began to receive a decade later. *See* FAC ¶ 12.

The negligent hiring claim asserted against USC is similarly unavailing because the FAC does not allege USC had notice of any kind of harassment or improper conduct when it hired Dr. Tyndall. To establish a negligent hiring claim, a plaintiff must show that the employer knew or should have known of the employee's unfitness before hiring the employee. "[I]n California, an employer can be held liable for negligent hiring if he knows the employee is unfit, or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness *before hiring him*." *Juarez*, 81 Cal. App. 4th at 395 (emphasis added). In sexual abuse cases, "the theory of negligent hiring [] encompasses

the *particular risk of molestation by an employee* with a history of this specific conduct." *Id* (affirming summary judgment on negligent hiring, where "there was no information accessible … that would cause [defendant] to suspect that Paz had a propensity to molest children"). The FAC does not allege any facts that USC was on notice that Dr. Tyndall had a history of sexual abuse, harassment or any other alleged misconduct, or that he posed a particular risk of such harm to students before hiring him in 1989. This is fatal to the claim of negligent hiring against USC.

(c)      Negligent Failure to Warn/Train/Educate (Claim 13): The FAC Does Not Allege That USC Had Requisite Notice.

The same lack of notice is fatal to the claim of negligent failure to warn, train, or educate. (Claim 13). The FAC alleges that USC failed to "protect Plaintiff… from the risk of" Dr. Tyndall's alleged misconduct "by properly warning, training, and/or educating Plaintiff about how to avoid such a risk." FAC ¶ 192. Once again, in the absence of facts suggesting USC was aware of Dr. Tyndall's alleged misconduct as of March 1991, this claim fails.

5.      Intentional Infliction of Emotional Distress (Claim 14): The FAC Does Not Allege Knowledge Required for Intentional Tort.

The claim of intentional infliction of emotional distress ("IIED") is, as its name suggests, an intentional tort. The elements of a prima facie case for IIED are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Sams v. Cty. of Riverside*, No. CV-17-1848 SVW (SS), 2018 WL 1474333, at *10 (C.D. Cal. Mar. 26, 2018), *citing Melorich Builders, Inc. v. Superior Court*, 160 Cal. App. 3d 931, 935 (1984). Liability for intentional infliction of emotional distress extends "only to conduct so extreme and outrageous

1    as to go beyond all possible bonds of decency, and to be regarded as atrocious, and

2    utterly intolerable in a civilized community." *Sams*, 2018 WL 1474333, at \*10.

3         Though the FAC asserts that "[a] reasonable person would not expect or

4    tolerate Defendants putting Dr. Tyndall who was *known to Defendants* to have

5    physically and sexually abused other student-patients, in a position of care of

6    Plaintiff," FAC ¶ 199, it alleges no facts to suggest that USC knew, as of 1991, that

7    Dr. Tyndall abused patients.  Therefore USC cannot be liable for IIED.[8]

8             6.   Unfair Business Practices (Claim 16): The FAC Does Not Allege

9                  That USC Had Notice Necessary to Commit an Unlawful,

10                 Unfair, or Fraudulent Act.

11        The final cause of action in the FAC requires the commission of an

12   "unlawful, unfair, or fraudulent business act" for liability.  Bus. & Prof. Code

13   § 17200.  The FAC makes conclusory allegations that USC committed such acts by

14   "failing to… prevent harassment and abuse," and "failing to adequately investigate."

15   FAC ¶ 217.  Again, these assertions are inconsistent with the FAC's allegation that

16   USC was not on notice until the early 2000s of any complaints of harassment or

17   abuse with respect to Dr. Tyndall.

18        Because the claims against USC fail, the FAC has not pled any "unlawful"

19   acts by USC.  "A violation of another law is a predicate for stating a cause of action

20   under" Section 17200's unlawful prong.  *ChriMar Systems, Inc. v. Cisco System,*

21   *Inc.* 2014 WL 5477666, at \*5 (N.D. Cal. Oct. 29, 2014).  Nor has the FAC alleged

22   any "unfair" acts within the meaning of the statute, at least because such acts require

23   knowledge on the part of the actor.  *See Coleman-Anacleto v. Samsung Elecs. Am.,*

24   ───────────
         [8]   The claim of negligent infliction of emotional distress (Claim 15) is not an
25   independent tort in California. *See Lawson v. Mgmt. Activities, Inc.*, 69 Cal. App.
     4th 652, 656 (1999) ("[T]here is no such thing as the independent tort of negligent
26   infliction of emotional distress.").  Further, the FAC's conclusory allegations that
     "[e]ach act of assault or battery by Dr. Tyndall was *foreseeable, given USC's and*
27   *The Board's awareness that Dr. Tyndall failed to follow protocol*," FAC ¶ 212, are
28   belied by allegations that USC first received complaints in the early 2000s.

MOTION TO DISMISS PER FRCP 12(b)(6) AND TO STRIKE PUNITIVE DAMAGES CLAIMS PER FRCP 12(f)

*Inc.*, No. 16-CV-02941-LHK, 2017 WL 86033, at *11 (N.D. Cal. Jan. 10, 2017) (complaint fails to state a claim under the unfair prong where it "contains no allegations that show that Defendant knew that its representations . . . were false when made."). Nor has the FAC adequately alleged any fraudulent acts committed by USC against her, as such acts likewise require knowledge by defendants. *See Coleman-Anacleto*, 2017 WL 86033, at *10 ("where a defendant lacked knowledge of the facts that rendered its representations misleading at the time it made the representations, courts have been unwilling to impose liability under the fraudulent prong of the [statute]."). Because the FAC does not allege knowledge of USC until the early 2000s—well after all of Plaintiff's causes of action had become time-barred—the FAC does not allege facts to support a claim that USC engaged in unfair, unlawful or fraudulent conduct as of 1991.

## IV.   THE PUNITIVE DAMAGES CLAIMS SHOULD BE DISMISSED

### A.   California Law Prohibits the Assertion of Punitive Damages Against a Health Care Provider Without a Prior Court Order.

CCP § 425.13 prohibits the assertion of a claim for punitive damages in a complaint against a health care provider unless the plaintiff prevails on a motion, supported by evidence, demonstrating a substantial probability of prevailing on a claim for punitive damages. CCP § 425.13(a); *College Hospital, Inc. v. Superior Court*, 8 Cal.4th 704 (1994). This provision applies to any cause of action arising from the provision of medical services to a patient by a health care provider, including fraud, battery, and other intentional torts. *Central Pathology Service Medical Clinic v. Superior Court*, 3 Cal.4th 181 (1992) (plaintiffs' claims for fraud and intentional infliction of emotional distress were directly related to manner in which defendants provided professional services, and therefore were governed by CCP §425.13(a)); *Cooper v. Superior Court*, 56 Cal.App.4th 744, 749 (1997) (reversing denial of motion to strike punitive damages in action premised on gynecologist's conduct pursuant to section 425.13). Even a claim that a hospital

allowed two hospital employees to sexually assault a patient is governed by section 425.13. *See United Western Medical Centers v. Superior Court (Michelle H.)*, 42 Cal.App.4th 500, 503-505 (1996).

Here, USC, as a provider of health care services, qualifies under the Health & Safety Code as a healthcare provider. *See* CCP § 425.13(b). Because the claims asserted against USC are premised on conduct which allegedly occurred in the course of medical care by Dr. Tyndall at the Student Health Center, section 425.13 applies to USC. *Central Pathology*, 3 Cal.4th 181 (medical clinic and physicians protected from punitive damages claims, per § 425.13); *United Western*, 42 Cal.App.4th 500. Therefore, the FAC's claims for punitive damages must be stricken, unless and until there is a court order authorizing such a claim.[9]

B.     CCP § 425.13 Is a Substantive Right That Applies In Federal Court.

The Ninth Circuit has not decided whether Cal. Code Civ. Proc. §425.13 is substantive or procedural law. However, a number of district courts in California have found the protections of CCP § 425.13 to be a substantive aspect of California's medical malpractice law and applied its protections in federal court to strike punitive damage claims. As one court explained, "[i]n the absence of direction from the Ninth Circuit, this court is persuaded by those of its sister courts that have found § 425.13 applicable in federal court. This court agrees that a state's view of the measure of damages is inseparable from the substantive right of action…." *Elias v. Navasartian*, No. 1:15-cv-01567-LJO-GSA-PC, 2017 WL 1013122, at *16 (E.D. Cal. 2017). "The legislative intent behind Section 425.13 shows the rule to be intimately bound to the state substantive causes of action for professional negligence…. The intent of the Legislature was that any claim for

---

[9] Per Fed. R. Civ. P. 12(f) the Court may strike improper material from a pleading, including an improperly asserted demand for punitive damages. *See Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n.34 (C.D. Cal. 1996); *Torrance Redev. Agency v. Solvent Coating Co.*, 763 F.Supp. 1060 (C.D. Cal. 1991) (striking punitive damages and attorney fee claims per Fed. R. Civ. P. 12(f)).

punitive damages in an action against a health care provider is subject to the statute if the injury that is the basis for the claim was caused by conduct directly related to the rendition of professional services." *Thomas v. Hickman*, No. CV F 06-0215 AWI SMS, 2006 WL 2868967, at *40 to *41 (E.D. Cal. 2006).[10]   Because CCP § 425.13 is "so intimately bound up to the substantive law" of professional negligence that it is "part of an integrated scheme for managing medical malpractice claims and constitutes a central feature of that scheme," *Allen v. Woodford*, No. 1:05-CV-01104-OWW-LJO, 2006 WL 1748587, at *21 (E.D. Cal. 2006), it should be deemed substantive law and applied in this case.

## CONCLUSION

For the above reasons, USC respectfully requests that the Court dismiss all claims asserted against USC.  Additionally, USC requests that the Court strike any requests for punitive damages based on any remaining claims asserted against USC.

DATED:  March 8, 2019

| | |
|---|---|
| FRASER WATSON & CROUTCH, LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| By:*/s/ Stephen C. Fraser* | By: */s/ Michael E. Williams* |
| STEPHEN C. FRASER<br>ALEXANDER M. WATSON<br>DANIEL K. DIK | JOHN B. QUINN<br>MICHAEL E. WILLIAMS<br>SHON MORGAN<br>TARA LEE |
| Attorneys for Defendant,<br>The University of Southern California, Board of Trustees of the University of Southern California | Attorneys for Defendant,<br>The University of Southern California, Board of Trustees of the University of Southern California |

---

[10]   To be sure, other district courts have found that CCP § 425.13 is a procedural rule that does not apply in federal court. *See, e.g.*, *Jackson v. East Bay Hospital*, 980 F. Supp. 1341 (N.D. Cal. 1997); *Estate of Prasad v. County of Sutter*, 958 F. Supp. 2d 1101, 1119-1121 (E.D. Cal. 2013).