Kevin T. Barnes, Esq. (#138477)
Gregg Lander, Esq. (#194018)
LAW OFFICES OF KEVIN T. BARNES
1635 Pontius Avenue, Second Floor
Los Angeles, CA 90025-3361
Tel.: (323) 549-9100 / Fax: (323) 549-0101
Email: Barnes@kbarnes.com

Joseph Tojarieh, Esq. (#265492)
TOJARIEH LAW FIRM, PC
10250 Constellation Boulevard, Suite 100
Los Angeles, CA 90067
Tel: (310) 553-5533 / Fax: (310) 553-5536
Email: JFT@tojariehlaw.com

Attorneys for Plaintiff JANE DOE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>          Plaintiff,<br><br>     v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, a California Corporation, BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA, an entity, form unknown; and GEORGE TYNDALL, M.D., an individual, and DOES 1 to 100, inclusive;<br><br>          Defendants.<br><br>_____ | Case No. 2:18-cv-09530 SVW (GJSx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS UNIVERSITY OF SOUTHERN CALIFORNIA'S AND THE BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6), AND TO STRIKE PUNITIVE DAMAGES CLAIMS PER F.R.C.P. 12(f)**<br><br>**Date: April 8, 2019**<br>**Time: 1:30 p.m.**<br>**Dept.: Courtroom 10A**<br><br>Honorable Stephen V. Wilson<br>Courtroom 10A<br><br>Action filed: November 9, 2018<br>Trial Date: None set |

///

///

///

**- 1 -**

# Table of Contents

**Page**

I.  INTRODUCTION .................................................................................... 1

II.  RELEVANT FACTS ............................................................................... 1

III.  STANDARDS ........................................................................................ 5

    A.  Motion to Dismiss ......................................................................... 5

    B.  Motion to Strike ............................................................................ 6

IV.  ANALYSIS ............................................................................................ 6

    A.  Ms. Doe's FAC is not barred by any statute of limitations. .......... 6

        1.  Ms. Doe discovered her claims in 2018. .............................. 7

        2.  Defendant fraudulently concealed Ms. Doe's claims. .......... 9

    B.  Plaintiff's inclusion of claims under Civil Code sections
        51.9 and 52.4 was inadvertent. .................................................. 13

    C.  The FAC alleges ample facts to support Ms. Doe's
        claims against the USC Defendants. ......................................... 13

        1.  The FAC repeatedly alleges the USC Defendants'
            advance knowledge of Dr. Tyndall's misconduct. ................ 13

        2.  Title IX: The FAC sufficiently alleges facts
            supporting actual notice and deliberate indifference. ........... 14

        3.  Bane Act: The FAC sufficiently alleges facts that
            Defendants interfered with Ms. Doe's rights through threat,
            intimidation, or coercion. ..................................................... 15

        4.  Constructive Fraud: The FAC sufficiently alleges
            that Defendants had notice and intent to deceive. ................ 16

        5.  Negligence: Ms. Doe's negligence claims are all
            supported by sufficient facts. ................................................ 17

        6.  Intentional Infliction of Emotional Distress:
            The FAC sufficiently alleges a claim for IIED. .................... 17

- i -

**PLAINTIFF'S OPPOSITION TO USC'S AND THE BOARD'S
MOTION TO DISMISS AND TO STRIKE PUNITIVE DAMAGES CLAIMS**

## <u>TABLE OF CONTENTS - Continued</u>

<u>Page</u>

       7.     *UCL: The FAC sufficiently alleges a claim for unfair competition under Business & Professions Code section 17200, et seq.*....................................................... 18

**D.**     **Ms. Doe's claim for punitive damages is valid.** ........................... 18

**E.**     **Should the Court find any merit to Defendants' Motion, Ms. Doe should be freely granted leave to amend.**...................... 20

**V.**   **CONCLUSION** ........................................................................ 20

**PLAINTIFF'S OPPOSITION TO USC'S AND THE BOARD'S**
**MOTION TO DISMISS AND TO STRIKE PUNITIVE DAMAGES CLAIMS**

## <u>Table of Authorities</u>

**Page**

<u>Cases</u>

*Amen v. Merced County Title Co.*
    58 Cal.2d 528 (1962) ............................................................................ 10

*Andrews Farms v. Calcot, Ltd.,*
    693 F.Supp.2d 1154 (E.D. Cal. 2010) ...................................................... 16

*April Enterprises, Inc. v. KTTV,*
    147 Cal.App.3d 805(1983) ...................................................................... 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).................................................................................. 6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................. 6

*Burrows v. Redbud Cmty. Hosp. Dist.,*
    188 F.R.D. 356 (N.D. Cal. 1997) ............................................................ 19

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,*
    637 F.3d 1047 (9th Cir. 2011) ................................................................ 13

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
    20 Cal.4th 163 (1999) .............................................................................. 18

*Cooper v. Pickett,*
    137 F.3d 616 (9th Cir.1997) .................................................................... 12

*Eminence Capital, LLC v. Aspeon, Inc.,*
    316 F.3d 1048 (9th Cir.2003) .................................................................. 20

*Erie Railroad Co. v. Tompkins,*
    304 U.S. 64 (1938).................................................................................. 19

*Estate of Prasad ex rel. Prasad v. County of Sutter,*
    958 F.Supp.2d 1101 (E.D. Cal. 2013) .............................................. 19, 20

*Fantasy, Inc. v. Fogerty,*
    984 F.2d 1524 (9th Cir.1993) .................................................................... 6

*Fogerty v. Fantasy, Inc.,*
    510 U.S. 517 (1994).................................................................................. 6

*Fox v. Ethicon Endo-Surgery, Inc.,*
    35 Cal.4th 797 (2005) ...................................................................... 6, 7, 8, 9

*Gafcon, Inc. v. Ponsor & Associates,*
    98 Cal.App.4th 1388 (2002) .................................................................... 18

*Gillespie v. Civiletti,*
    629 F.2d 637 (9th Cir. 1980) ................................................................... 17

**- iii -**

**PLAINTIFF'S OPPOSITION TO USC'S AND THE BOARD'S
MOTION TO DISMISS AND TO STRIKE PUNITIVE DAMAGES CLAIMS**

## Table of Authorities - Continued

**Cases - Continued**
Page

*Hanna v. Plumer,*
380 U.S. 460 (1965)...................................................................... 19

*In Re GlenFed, Inc. Securities Litigation,*
42 F.3d 1541 (9th Cir.1994) ......................................................... 12

*Jackson v. E. Bay Hosp.,*
980 F. Supp. 1341 (N.D. Cal. 1997)............................................... 19

*Jolly v. Eli Lilly & Co.*
44 Cal.3d 1103 (1988) .................................................................... 8

*Kahle v. Gonzales,*
474 F.3d 665 (9th Cir. 2007) ........................................................... 6

*Ladd v. County of San Mateo,*
12 Cal. 4th 913 (1996) .................................................................. 17

*LeDuc v. Ky. Cent. Life Ins. Co.,*
814 F.Supp. 820 (N.D.Cal.1992)...................................................... 6

*Lightner Mining Co. v. C.D. Lane*
161 Cal. 689 (1911) ................................................................. 10, 11

*Marksman Partners, L.P. v. Chantal Pharm. Corp.,*
927 F.Supp. 1297 (C.D.Cal.1996).................................................. 12

*McCue v. S. Fork Union Elem. Sch.,*
766 F. Supp. 2d 1003 (E.D. Cal. 2011) .......................................... 15

*Migliori v. Boeing North American, Inc.,*
114 F.Supp.2d 976 (C.D. Cal. 2000).............................................. 13

*Morrison v. Pal,*
No. 117CV00776AWIJLT, 2018 WL 6460038
(E.D. Cal. Dec. 10, 2018) ............................................................. 16

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*
6 Cal.3d 176 (1971) ..................................................................... 10

*Neveu v. City of Fresno,*
392 F. Supp. 2d 1159 (E.D. Cal. 2005) .......................................... 19

*Norgart v. Upjohn Co.,*
21 Cal.4th 383 (1999)................................................................. 6, 7

*Oden v. Northern Marianas College,*
440 F.3d 1085 (9th Cir. 2006) ....................................................... 14

*Ovando v. County of Los Angeles,*
159 Cal.App.4th 42 (2008) .............................................................. 7

- iv -

**PLAINTIFF'S OPPOSITION TO USC'S AND THE BOARD'S
MOTION TO DISMISS AND TO STRIKE PUNITIVE DAMAGES CLAIMS**

## <u>Table of Authorities - Continued</u>

Page

**<u>Cases - Continued</u>**

*Park v. Travelers Commercial Ins. Co.,*
No. CV1401919RGKAGRX, 2014 WL 12597084
(C.D. Cal., Apr. 21, 2014). ........................................... 18

*Parsons v. Tickner,*
31 Cal.App.4th 1513 (1995) .......................................... 7

*Pashley v. Pacific Electric Railway Co.*
25 Cal.2d 226 (1944) ......................................... 7, 9, 10, 11

*Rutherford v. Rideout Bank*
11 Cal.2d 479 (1938) ................................................ 11

*Scalia v. County of Kern,*
308 F.Supp.3d 1064 (E.D. Cal. 2018) ............................ 19

*Stafford v. Shultz*
42 Cal.2d 767 (1954) ............................................... 10

*Stanwood v. Mary Kay, Inc.,*
941 F. Supp. 2d 1212 (C.D. Cal. 2012) ........................ 17

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007) ..................................... 6

*Ward v. Westinghouse Canada, Inc.,*
32 F.3d 1405 (9th Cir.1994) ....................................... 7

*Whittlestone, Inc. v. Handi-Craft Co.,*
618 F.3d 970 (9th Cir. 2010) ..................................... 18

*Wohlgemuth v. Meyer*
139 Cal.App.2d 326 (1956) ....................................... 10

*Younan v. Equifax Inc.,*
111 Cal.App.3d 498 (1980) ....................................... 16

*Zamora v. Sacramento Rendering Co.,*
No. Civ. S-05-00789 DFL KJM, 2007 WL 137239
(E.D. Cal. 2007) ................................................... 15

**<u>Statutes/Rules</u>**

California Business & Professions Code § 17200 ................ 18

California Civil Code § 51.9 ....................................... 13

California Civil Code § 52.4 ................................... 13, 15

California Code of Civil Procedure § 425.13 .............. 19, 20

- v -

## Table of Authorities - Continued

**Statutes/Rules - Continued**                                                        **Page**

Federal Rules of Civil Procedure § 8 ....................................................................... 20

Federal Rules of Civil Procedure § 9 ............................................................... 12, 13

Federal Rules of Civil Procedure § 12 ........................................................ 6, 18, 19

Federal Rules of Civil Procedure § 15 .............................................................. 20

**PLAINTIFF'S OPPOSITION TO USC'S AND THE BOARD'S
MOTION TO DISMISS AND TO STRIKE PUNITIVE DAMAGES CLAIMS**

## PLAINTIFF'S OPPOSITION TO DEFNDANTS' MOTION TO DISMISS

## I.    INTRODUCTION

Defendants University of Southern California ("USC") and USC's Board of Trustees (individually, the "Board," and with USC, collectively, "Defendants") hired a predatory physician, Dr. George Tyndall ("Dr. Tyndall"), as its sole, full-time gynecologist at the student health center. Plaintiff Jane Doe ("Ms. Doe") was assaulted by Dr. Tyndall in 1991. For decades, Defendants concealed Dr. Tyndall's pervasive sexual abuse and harassment of female patients, allowing him access to prey on USC's young female student population.

When Dr. Tyndall's pervasive abuse finally came to light in a 2018 newspaper article, Ms. Doe realized she had been betrayed by the very institution that she once had much pride in, and the horrific reality of Dr. Tyndall's "medical care" set in. Thereafter, Ms. Doe brought this action, alleging claims against USC, the Board, and Dr. Tyndall.

Defendants now bring a Motion to Dismiss to prevent Ms. Doe from having her day in court. The Motion asserts two main arguments. First, Defendants argue that Ms. Doe's claims are barred by the statute of limitations. However, this argument is meritless, as Defendants' reprehensible conduct in actively hiding Dr. Tyndall's misconduct estops Defendants from benefitting from such concealment. Second, Defendants argue that Ms. Doe has not alleged that Defendants had notice of Dr. Tyndall's abuse. To the contrary, Ms. Doe's Complaint repeatedly alleges Defendants' knowledge, and for several claims, no actual knowledge is required.

Defendants also seek to strike Ms. Doe's claim for punitive damages on the ground that Ms. Doe cannot pray for punitive damages without prior court order. This argument is unsupported by the weight of authority on this issue.

Accordingly, Defendants' motion must be denied. However, if the Court is inclined to grant any part of Defendants' motion, Ms. Doe should be freely granted leave to amend the Complaint.

**PLAINTIFF'S OPPOSITION TO USC'S AND THE BOARD'S
MOTION TO DISMISS AND TO STRIKE PUNITIVE DAMAGES CLAIMS**

## II.    RELEVANT FACTS

USC hired Dr. Tyndall in 1989 to work at its Student Health Center as the sole full-time gynecologist. Ms. Doe's First Amended Complaint, Dkt No. 38 ["FAC"] ¶ 9. Over the span of three decades, or about sixty school semesters, Dr. Tyndall treated tens of thousands of female students, many of them teenagers seeing a gynecologist for the first time. FAC ¶ 9.

Few, if any, of the young women who lay down on Dr. Tyndall's exam table at the Student Health Center knew that he had been accused repeatedly of misconduct. FAC ¶ 9. Such allegations included claims that, while he worked, Dr. Tyndall would make unseemly comments, such as describing patients' skin as "flawless," "creamy" or "beautiful," according to multiple witnesses. FAC ¶ 14. He remarked on students' "perky breasts." "They stand right up there, don't they?" he once said. FAC ¶ 14. The allegations continued that, during some exams, Dr. Tyndall made explicit references to sexual intercourse while his fingers were inside patients; for example, he would tell young ladies with their hymens intact, "Don't worry about it, your boyfriend's gonna love it." FAC ¶ 20.

Ms. Doe attended USC from approximately 1990 to 1993. FAC ¶ 1. As the FAC alleges, during the second semester of her freshman year at USC, in or about March of 1991, Ms. Doe was subjected to medical examination by Dr. Tyndall one time. FAC ¶ 4. Ms. Doe had a confidential, privileged, and/or fiduciary relationship with Defendants, and placed her trust in them. FAC ¶ 58.

During his medical examination of Ms. Doe, Dr. Tyndall molested, sexually abused, and sexually harassed her, by, among other things, performing an unnecessarily aggressive inspection of Ms. Doe's private parts. FAC ¶ 5. During the exam, Dr. Tyndall felt her breasts, put his fingers inside her vagina and anus, and aggressively moved his fingers and a speculum around inside of her. Dr. Tyndall also made grossly inappropriate remarks at the time. FAC ¶ 5. For example, when Ms. Doe told Dr. Tyndall that she was having difficulty finding the

**- 2 -**

string of her tampon, he remarked "You are such an idiot - don't you know it's not a black hole? Haven't you had sex before?" and words to that effect. FAC ¶ 6.

Dr. Tyndall misrepresented that his conduct was for a legitimate medical purpose and/or conformed to accepted medical practice. FAC ¶ 55. However, all Defendants knew that Dr. Tyndall's examinations were not in fact proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty, including gynecology or obstetrics. FAC ¶ 56. Defendants had extensive and detailed knowledge of Dr. Tyndall's history of pervasive and violent misconduct, yet affirmatively concealed Dr. Tyndall's propensity to sexually abuse female patients and his past sexual abuse. FAC ¶ 56. Defendants took no action regarding prior complaints against Dr. Tyndall and continued to allow him to treat female patients despite knowledge of his misconduct and unsuitability. FAC ¶ 56.

Defendants misrepresented Dr. Tyndall's suitability and further implemented various measures to conceal Dr. Tyndall's actions, including permitting him to remain in a position of authority and trust, scheduling patients for gynecological examinations with him, granting him unfettered and unsupervised access to patients, holding him out as a trustworthy physician, and failing to disclose his prior misconduct to patients. FAC ¶ 57. Defendants intended that Ms. Doe and Dr. Tyndall's other patients act on the concealment and misrepresentations by seeking treatment and not report Dr. Tyndall's conduct, and Ms. Doe and other patients did so rely on the concealment and misrepresentations. FAC ¶ 57.

For over two decades, USC concealed Dr. Tyndall's sexual abuse. In 2013, eight chaperones reported concerns about Dr. Tyndall to their supervisor, nurse Cindy Gilbert. FAC ¶ 15. Nurse Gilbert went to then-Executive Director Dr. Lawrence Neinstein, and the head of clinic nursing, Tammie Akiyoshi. These complaints were referred to USC's Office of Equity and Diversity, which investigates sexual misconduct and racial and gender discrimination. FAC ¶ 15.

- 3 -

According to USC (though multiple chaperones who had complained were never informed of the probe or questioned by the investigator), the investigation concluded there was no violation of school policy, and the only action Dr. Neinstein took as a result of the investigation was barring Dr. Tyndall from locking the door of his office while with patients. FAC ¶ 16.

From 2014 to 2016, Nurse Gilbert repeatedly went to Tammie Akiyoshi, Dr. Neinstein, and other clinic administrators, who seemed uninterested. Dr. Tyndall continued seeing as many as 16 patients a day. FAC ¶ 27. In June 2016, Nurse Gilbert went to USC's rape crisis center and spoke to Executive Director Ekta Kumar, a psychologist, who seemed astonished and used the word "abuse" in response to her description of Dr. Tyndall's conduct, promising to take the matter higher at USC. FAC ¶ 28. Also in June 2016, Nurse Gilbert and other staffers stumbled upon a box in a cabinet in Dr. Tyndall's office containing images of student-patients' genitals. FAC ¶ 29. The slides and photographs were shot in the old health clinic in 1990 and 1991 and some were labeled with identifying patient information. A senior clinic administrator confiscated the box. FAC ¶ 29.

Even so, Dr. Tyndall continued to receive his salary from USC. Then, in a secret deal in the summer of 2017, top USC administrators allowed Dr. Tyndall to resign quietly with a financial payout. FAC ¶ 30. The terms of the deal included the offer that if Dr. Tyndall would agree to resign, he would be given a severance, and the conclusion of the USC investigation would be changed to "no finding." FAC ¶ 30. Dr. Tyndall's resignation was effective June 30, 2017. USC did not inform Dr. Tyndall's patients. FAC ¶ 31. An October communication advised that Dr. Tyndall was "no longer with the University of Southern California." FAC ¶ 31.

In 2018, Ms. Doe read a news article in the Los Angeles Times about USC, The Board, and Dr. Tyndall that brought forth the realization that she had been betrayed and violated by the very institution that she once had much pride in, and the horrific reality of Dr. Tyndall's "medical care" set in. FAC ¶ 7. In January

2018, Dr. Tyndall renewed his California medical license, and has been quoted as saying that he intends to work well into his eighties. FAC ¶ 33.

On November 9, 2018, Ms. Doe filed her complaint with these allegations. The FAC was filed and served on February 27, 2019. The FAC asserts 16 causes of action: (1) Violation of Title IX; (2) Unruh Act Violation (Civil Code § 51); (3) Sexual Harassment (Civil Code § 51.9); (4) Bane Act Violation (Civil Code § 52.1); (5) Gender Violence (Civil Code § 52.4); (6) Sexual Assault; (7) Sexual Battery (Civil Code § 1708.5); (8) Constructive Fraud (Civil Code § 1573); (9) Violation of Cal. Ed. Code § 66270; (10) Negligence; (11) Negligence Per Se; (12) Negligent Hiring, Supervision and Retention; (13) Negligent Failure to Warn; (14) Intentional Infliction of Emotional Distress (IIED); (15) Negligent Infliction of Emotional Distress (NIED); and (16) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200). Causes of action 5-7 are not asserted against Defendants.

On March 8, 2019, Defendants moved for an order dismissing the FAC as against them under Federal Rules of Civil Procedure, Rule 12(b)(6), and striking punitive damages under Rule 12(f). As set forth in detail below, Ms. Doe zealously opposes Defendants' motion. Further, even if the Court finds merit in Defendants' arguments, Ms. Doe should be allowed an opportunity to further amend her complaint to allege those facts that the Court may find lacking.

## III.   STANDARDS

### A. Motion to Dismiss

Rule 12(b)(6) (failure to state a claim) provides that a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead affirmative factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and

- 5 -

matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Kahle v. Gonzales,* 474 F.3d 665, 667 (9th Cir. 2007).

**B. Motion to Strike**

Rule 12(f) allows a party to move to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). A matter is "immaterial" if it has no bearing on the claims and defenses pleaded. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), rev'd on other grounds in *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534–35 (1994). Thus, "[m]otions to strike are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Ky. Cent. Life Ins. Co*., 814 F.Supp. 820, 830 (N.D.Cal.1992).

**IV.   ANALYSIS**

**A. Ms. Doe's FAC is not barred by any statute of limitations.**

A statute of limitations period begins to run when the cause of action accrues. *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal.4th 797, 806 (2005). Generally, a cause of action accrues at "the time when the cause of action is complete with all of its elements." *Id., citing Norgart v. Upjohn Co*., 21 Cal.4th 383, 397 (1999) (internal quotations omitted). "An important exception to this general rule is the discovery rule which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal.4th at 807 (citing *Norgart,* 21 Cal.4th at 397). Similarly, a party's fraudulent concealment of facts giving rise to a cause of action will toll the statute of limitations until the facts are discovered by the plaintiff. *Pashley v. Pacific Electric Railway Co.,* 25 Cal.2d 226, 229-30 (1944). Because both the discovery rule and tolling for fraudulent concealment apply here, Ms. Doe's claims are timely, regardless of which statute of limitations applies.

**PLAINTIFF'S OPPOSITION TO USC'S AND THE BOARD'S
MOTION TO DISMISS AND TO STRIKE PUNITIVE DAMAGES CLAIMS**

### *1. Ms. Doe discovered her claims in 2018.*

Under the discovery rule, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." *Fox*, 35 Cal.4th at 807 (citing *Norgart,* 21 Cal.4th at 397). "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. *Id.*

The discovery rule "protects those who are ignorant of their cause of action through no fault of their own. It permits delayed accrual until a plaintiff knew or should have known of the wrongful conduct at issue." *April Enterprises, Inc. v. KTTV,* 147 Cal.App.3d 805, 832 (1983); *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1112 (1988) ("When a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence … can support only one reasonable conclusion.") "[T]he question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. County of Los Angeles,* 159 Cal.App.4th 42, 61 (2008); see also *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1408 (9th Cir.1994) ("Under California law, the question of when [the plaintiff] was on inquiry notice of potential wrongdoing is a factual question."); *Parsons v. Tickner,* 31 Cal.App.4th 1513, 1526 (1995) (noting that delayed discovery rule applies in two situations: (1) where it would be difficult for a plaintiff to understand the breach or the resulting injuries; and (2) where the parties have a confidential or fiduciary relationship).

The accrual of a cause of action in relation to the discovery rule is typically a question of fact. *Fox*, 35 Cal.4th at 810. "A plaintiff whose complaint shows on its face that his [or her] claim would be barred without the benefit of the discovery

- 7 -

rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808. The court must take as true such allegations regarding delayed discovery, as well as whether any defect in pleading could be cured. *Id.* at 811.

Here, Ms. Doe did not discover her injuries until long after the wrongful acts occurred. FAC ¶ 7. Ms. Doe was not put on notice of her civil claims against Defendants by what occurred during her examination. At no point did anyone advise her that Dr. Tyndall's conduct was not medically appropriate or necessary. FAC ¶¶ 8, 56. At no point during or after her examination did Defendants or anyone else advise her of Dr. Tyndall's prior violent sexual mistreatment of other female patients. FAC ¶¶ 8, 56. Ms. Doe did not discover or suspect a factual basis for her claims until 2018, when she read a news article entitled "A USC doctor was accused of bad behavior with young women for years. The University let him continue treating students," by Harriet Ryan, Matt Hamilton, and Paul Pringle, which was published on May 16, 2018, in The Los Angeles Times. FAC ¶ 7.

The nature of Ms. Doe's injuries and subsequent damages, and their causal relationship to Defendants' treatment of Ms. Doe, were not and could not have been discovered through reasonable care and diligence. FAC ¶ 58. Ms. Doe only became aware that Defendants' mistreatment constituted sexual battery, harassment, and assault, and/or gender-based violence in 2018, when she learned that her experience was not unique, and that other female patients of Dr. Tyndall had complained of his sex-based violence and misconduct. Until then, she did not have "a reason to at least suspect a factual basis" for her claims and did not have "information of circumstances to put her on inquiry" or an opportunity to obtain knowledge from sources open to her investigation, and could not have "made early discovery despite reasonable diligence." *Fox,* 35 Cal.4th at 807-08. Ms. Doe sufficiently sets forth facts regarding the time and manner of her discovery, as well as the inability to have made earlier discovery despite reasonable diligence.

- 8 -

### 2. *Defendant fraudulently concealed Ms. Doe's claims.*

"[T]he defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff from bringing an action within the statutory period, is estopped from taking advantage of his own wrong." *Pashley*, 25 Cal.2d at 231. "Otherwise, in such cases, the defendant, by concealing his fraud, would effectively block recovery by the plaintiff because of the intervention of the statute of limitations." *Id.* at 232.

"The same conclusion governs when the defendant under duty of disclosure has concealed known essential facts upon which to base a recovery against him and thereby has hindered the plaintiff from bringing his action until after the statute would otherwise have terminated the period of limitation... Whether in itself it is an actionable fraud or merely suffices to toll the statute on the original obligation, the breach of a duty to disclose known facts with the intention to and which does hinder commencement of an action until the action would be outlawed, is a fraud practiced upon the plaintiff which in conscience estops the defendant's reliance on the statute of limitations." *Pashley*, 25 Cal.2d at 232.

A doctor has such a duty of disclosure to patients. *Pashley*, 25 Cal.2d at 235-36 (holding that doctors' failure to make full disclosure of plaintiff's injuries "excused his failure to seek knowledge from independent sources and his delay in commencing the action"); *Stafford v. Shultz,* 42 Cal.2d 767, 775-79 (1954) (holding complaint alleged sufficient facts to toll statute of limitations based on doctors' fraudulent misrepresentations and concealment). "The doctor-patient relationship is a fiduciary one and it is incumbent on the doctor to reveal all pertinent information to his patient. The same is true of the hospital-patient relationship. Withholding information would in a sense amount to misrepresentation." *Wohlgemuth v. Meyer,* 139 Cal.App.2d 326, 331 (1956). "[T]he disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured

- 9 -

thereby to an action." *Pashley*, 25 Cal.2d at 235.

"Cases in which the defendant stands in a fiduciary relationship to the plaintiff are frequently treated as if they involved fraudulent concealment of the cause of action by the defendant. The theory is that although the defendant makes no active misrepresentation, this element is supplied by an affirmative obligation to make full disclosure, and the non-disclosure itself is fraud." *Amen v. Merced County Title Co.,* 58 Cal.2d 528, 534 (1962) (citations and internal quotation marks omitted). This "prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 189 (1971).

Importantly, a doctor's non-disclosure or misrepresentation of facts to a patient is imputed to the doctor's employer/principal. *Pashley*, 25 Cal.2d at 235-36 (holding false statements made to patient by defendant's employed physicians were imputed to defendant to defeat statute of limitations defense) (citing *Lightner Mining Co. v. C.D. Lane*, 161 Cal. 689, 703 (1911) ["The fraud of the agents will be imputed to the principal for the purpose of preventing the running of the statute of limitations whether the principal was aware of it or not"]).

"The injustice of allowing such fraud to become successful by reason of lapse of time and concealment is an injustice to the plaintiff, and it is precisely the same in effect and extent whether the fraud is that of the defendant or its agents." *Pashley*, 25 Cal.2d at 236. "The principal, having received the benefits of his agents' fraud, has no equity in his favor." *Lightner Mining Co.*, 161 Cal. at 703; *see also Rutherford v. Rideout Bank,* 11 Cal.2d 479, 483-84 (1938) (principal who puts agent in position to commit fraud upon third person is subject to liability for the fraud, even if agent acted solely for own purposes, principal is entirely innocent, and principal received no benefit from the transaction).

Here, Ms. Doe has properly alleged that all Defendants knew that Dr. Tyndall's examinations were not proper, appropriate, legitimate, and/or considered

- 10 -

within standard of care by any physician of any specialty, including gynecology or obstetrics. FAC ¶ 56. Significantly, although Defendants repeatedly assert in their motion that Ms. Doe has not alleged that they were on notice of Dr. Tyndall's prior misconduct before Ms. Doe's exam, this is simply not true. As addressed in full, *infra*, Ms. Doe repeatedly alleged that Defendants had knowledge of Dr. Tyndall's unsuitability at all relevant times. E.g., FAC ¶¶ 56, 180, 185, 186.

Despite their knowledge, Defendants affirmatively concealed Dr. Tyndall's propensity to sexually abuse female patients and his past sexual abuse. Defendants misrepresented Dr. Tyndall's suitability and further implemented various measures to conceal Tyndall's actions, including permitting him to remain in a position of authority and trust, scheduling patients for gynecological examinations with him, granting him unfettered and unsupervised access to patients, holding him out as a trustworthy physician, and failing to disclose his prior misconduct to patients. FAC ¶ 57. In concealing the misconduct, Defendants intended that Ms. Doe and other patients rely on the concealment by seeking treatment and not reporting Dr. Tyndall's conduct, and Ms. Doe and the other patients did so rely on the concealment and misrepresentations. FAC ¶ 57.

Defendants' reliance on *Mark K. v. Roman Catholic Archbishop*, 67 Cal.App.4th 603, 613 (1998), is misplaced. There, the court found that there was "no allegation …that the church concealed the fact of plaintiff's underlying injury." *Id*. Here, in contrast, Ms. Doe alleges that Defendants' actions included concealment of the impropriety of Dr. Tyndall's examination, i.e., that Defendants concealed the fact of Ms. Doe's underlying injury. Accordingly, *Mark K.* does not help Defendants.

Defendants also argue that Ms. Doe failed to set forth the fraudulent concealment allegations with sufficient particularity. Under Fed.R.Civ.P. 9(b), "a plaintiff must include statements regarding the time, place, and nature of the alleged fraudulent activities. … In certain cases, to be sure, the requisite

particularity might be supplied with great simplicity." *In Re GlenFed, Inc.*

*Securities Litigation,* 42 F.3d 1541, 1547–1548 (9th Cir.1994) (en banc),

superseded by statute on other grounds as stated in *Marksman Partners, L.P. v.*

*Chantal Pharm. Corp.,* 927 F.Supp. 1297 (C.D.Cal.1996); *see Cooper v. Pickett,*

137 F.3d 616, 627 (9th Cir.1997) ("fraud allegations must be accompanied by 'the

who, what, when, where, and how' of the misconduct charged").

    Ms. Doe sufficiently pleads the time, place, and nature of Defendants'

concealment. Ms. Doe repeatedly alleges that, for over 25 years, Defendants knew

of Dr. Tyndall's sexual assaults on his patients. E.g., FAC ¶ 56, 142. The "place" is

identified as the USC campus. FAC ¶¶ 1-2. And the FAC details the nature of

Defendants' misrepresentations and concealment, "including permitting him to

remain in a position of authority and trust, scheduling patients for gynecological

examinations with him, granting him unfettered and unsupervised access to

patients, holding him out as a trustworthy physician, and failing to disclose the

prior misconduct to patients." FAC ¶ 57. The preliminary allegations explain the

fraudulent concealment at length. FAC ¶¶ 1-35, 49-59. These allegations are

incorporated by reference into each of Ms. Doe's claim.

    As a result of this intentional concealment and the employment of Dr.

Tyndall, Ms. Doe sought medical treatment with Defendants. Ms. Doe had a

confidential, privileged, and/or fiduciary relationship with Defendants and placed

her trust in them. FAC ¶¶ 58, 127-129. The actions and inactions of Defendants

constituted fraudulent concealment, and prevented Ms. Doe, despite her reasonable

diligence, from discovering the conduct alleged in her complaint.

    Although Defendants contend that Ms. Doe's claims were not tolled because

Ms. Doe sensed that Dr. Tyndall's examination was improper, "suspicion of

wrongdoing does not foreclose application of the fraudulent concealment

doctrine." *Migliori v. Boeing North American, Inc.*, 114 F.Supp.2d 976, 984 (C.D.

Cal. 2000). "[T]he question is not whether a plaintiff was on notice of some

- 12 -

wrongdoing. Instead, the question is whether the plaintiff had knowledge of facts, or should have known about facts, that placed him or her on notice of the specific cause of action." *Id.*

By concealing their knowledge of Dr. Tyndall's sexual assaults, Defendants precluded Ms. Doe from finding the facts that would give notice of her particular claims. Consequently, the statute of limitations was tolled for Ms. Doe's claims.

## B.  Ms. Doe's inclusion of claims under Civil Code sections 51.9 and 52.4 was inadvertent.

Ms. Doe acknowledges that Civil Code sections 51.9 and 52.4 had not been enacted at the time of Dr. Tyndall's assault of her and that these statutes do not appear to apply retroactively. During the parties' meet and confer process, Ms. Doe agreed to dismiss these, and *only* these claims. However, Ms. Doe inadvertently filed the FAC without removing these claims. As a result, Ms. Doe does not oppose the dismissal of her third and fifth causes of action.

## C.  The FAC alleges ample facts to support Ms. Doe's claims against Defendants.

### 1.    *The FAC repeatedly alleges Defendants' advance knowledge of Dr. Tyndall's misconduct.*

Defendants contend that "plaintiff nowhere alleges facts supporting her conclusory contention that USC had any notice of Dr. Tyndall's conduct." First, under Rule 9(b), "malice, intent, knowledge, and other conditions of a person's mind" may be alleged generally. Accordingly, a plaintiff need allege only "enough facts to raise a reasonable expectation that discovery will reveal evidence of" a defendant's knowledge or state of mind. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

Further, the FAC contains repeated and specific allegations regarding Defendants' notice, *inter alia*:

///

**PLAINTIFF'S OPPOSITION TO USC'S AND THE BOARD'S
MOTION TO DISMISS AND TO STRIKE PUNITIVE DAMAGES CLAIMS**

¶ 56: **"**All Defendants knew that Dr. Tyndall's examinations were not proper, appropriate, legitimate, and/or considered within standard of care byany physician of any specialty and/or gynecology or obstetrics …"

¶ 180: "Defendants, by and through their respective agents, servants and employees, knew or should have known of Dr. Tyndall's dangerous and exploitive propensities and that Dr. Tyndall was an unfit agent."

¶ 185: "Defendants were put on notice, knew and/or should have known that Dr. Tyndall had previously engaged and continued to engage in unlawful sexual conduct with student-patients, and had previously and was continuing to commit other felonies, for his own personal sexual gratification …"

¶ 186: "Defendants were placed on actual or constructive notice that Dr. Tyndall had molested and/or was molesting student-patients during his employment with Defendants. Defendants were informed of molestation, sexual assault, sexual abuse, and/or sexual harassment of patients committed by Dr. Tyndall prior to Plaintiff's sexual abuse, and of conduct by Dr. Tyndall that would put a reasonable person on notice of such propensity to molest and abuse young female students. Defendants also had knowledge of inappropriate conduct and molestation, sexual assault, sexual abuse, and/or sexual harassment committed by Dr. Tyndall during his employment…"

As a result, Ms. Doe has amply pled Defendants' notice and knowledge for all claims on which such notice/knowledge are premised.

## 2. *Title IX: The FAC sufficiently alleges facts supporting actual notice and deliberate indifference.*

A claim under Title IX must allege that the defendant had actual knowledge of the discrimination and failed to adequately respond, i.e., acted with deliberate indifference. *Oden v. Northern Marianas College,* 440 F.3d 1085, 1089 (9th Cir. 2006). Defendants here contend that Ms. Doe fails to plead "actual notice" and "deliberate indifference." Defendants are incorrect.

Regarding "actual notice," Ms. Doe explicitly pled that "Defendant USC … had actual notice that Dr. Tyndall posed a substantial risk of molestation, sexual assault, sexual abuse, and/or sexual harassment to the young female student-patients who sought treatment through Defendant USC's Student Health Clinic. Specifically, Defendant USC received numerous complaints of Dr. Tyndall's sexual abuse, yet allowed such sexual abuse to continue unabated." FAC ¶ 66.

**- 14 -**

Regarding "deliberate indifference," Ms. Doe explicitly pled that "Defendants … were deliberately indifferent to the substantial risk of molestation, sexual assault, sexual abuse, and/or sexual harassment posed to student-patients who came into contact with Dr. Tyndall …. After receiving actual notice of complaints of sexual abuse by Dr. Tyndall, Defendants … ignored the sexual abuse that Dr. Tyndall inflicted on Ms. Doe and others and allowed him to continue treating young female students. It was this conduct that constitutes willful indifference towards Ms. Doe, who was subjected to Dr. Tyndall's unfettered sexual misconduct." FAC ¶ 67.

Accordingly, Ms. Doe has sufficiently pled a Title IX claim.

### 3. Bane Act: The FAC sufficiently alleges facts that USC interfered with Ms. Doe's rights through threat, intimidation, or coercion.

While the terms "threat," "intimidation," or "coercion" are not defined in Civil Code section 52.1, courts have applied their ordinary and common meaning. See, e.g., *Zamora v. Sacramento Rendering Co.,* 2007 WL 137229, *8, n. 6 (E.D. Cal. 2007, No. Civ. S-05-00789 DFL KJM) (defining intimidation according to its ordinary meaning as "to make timid or fearful"); *McCue v. S. Fork Union Elem. Sch.,* 766 F. Supp. 2d 1003, 1011 (E.D. Cal. 2011) (explaining "[f]or the purposes of the Bane Act, the term 'threat' means 'an "expression of an intent to inflict evil, injury, or damage to another"). Defendants contend that "None of the acts or omissions alleged against USC constitute the 'specified improper means' the Bane Act requires." To the contrary, Ms. Doe alleged that she was sexually assaulted. FAC ¶¶ 100. These assaults were threatening, intimidating, and/or coercive.

Defendants also allege Ms. Doe's Bane Act claim is deficient because she did not notify USC of her assault. However, a direct complaint to USC was not required, because Defendants are vicariously liable for Dr. Tyndall's acts. *Morrison v. Pal,* No. 117CV00776AWIJLT, 2018 WL 6460038, at *9 (E.D. Cal. Dec. 10, 2018).

**PLAINTIFF'S OPPOSITION TO USC'S AND THE BOARD'S
MOTION TO DISMISS AND TO STRIKE PUNITIVE DAMAGES CLAIMS**

### 4.    *Constructive Fraud: The FAC sufficiently alleges that Defendants had notice and intent to deceive.*

"The elements for a cause of action for constructive fraud are fiduciary relationship, nondisclosure, reliance, and resulting injury." *Andrews Farms v. Calcot, Ltd.,* 693 F.Supp.2d 1154, 1166 (E.D. Cal. 2010) (citing *Younan v. Equifax Inc.,* 111 Cal.App.3d 498 (1980)).

As addressed in detail above, Ms. Doe repeatedly and sufficiently alleged that Defendants had notice of Dr. Tyndall's unsuitability. Defendants myopically read the FAC to allege that they received notice of Dr. Tyndall's misconduct in "the early 2000s," but these specific allegations do not negate the general allegations that Defendants had notice since the beginning of Dr. Tyndall's tenure at USC. E.g., FAC ¶¶ 56, 185. Ms. Doe also alleges that, both before and after her examination, Defendants concealed Dr. Tyndall's propensity to assault patients. FAC ¶¶ 132. Ms. Doe further alleged that the concealment caused her to not only be subjected to Dr. Tyndall's abuse, but also to continue to act as a student at USC, among other acts in reliance. FAC ¶ 140.

Finally, Defendants' contention that Ms. Doe failed to identify the person who concealed the relevant facts from her is both factually and legally incorrect. First, Ms. Doe repeatedly alleges that Dr. Tyndall concealed his assaults and dangerous propensity. E.g., FAC ¶¶ 55, 139. Second, by its very nature, a claim for fraudulent concealment does not require the same degree of particularity as other fraud claims because that information itself is normally concealed, as it was here. See *Stanwood v. Mary Kay, Inc.,* 941 F. Supp. 2d 1212, 1221 (C.D. Cal. 2012). Further, a plaintiff must be given an opportunity through discovery to identify any unknown defendants who could not be known before the filing of the complaint. *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980).

As a result, Ms. Doe has sufficiently alleged a claim for fraudulent concealment.

5. ***Negligence: Ms. Doe's negligence claims are all supported by sufficient facts.***

"The elements of a cause of action for negligence are well established. They are (a) a legal duty to use care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo,* 12 Cal. 4th 913, 917 (1996).

Defendants do not specify what element of Ms. Doe's negligence claims they challenge. Instead, Defendants contend that Ms. Doe has insufficiently pleaded her claim for negligence because she has supposedly failed to allege that Defendants knew of Dr. Tyndall's misconduct.

First, as discussed in detail above, Ms. Doe repeatedly and clearly alleges that Defendants had notice and knowledge of Dr. Tyndall's unsuitability and prior abuse of patients.

Second, in each negligence claim for negligence, Ms. Doe alleges that Defendants "knew *or should have known*" of Dr. Tyndall's unfitness. FAC ¶¶ 158, 166, 178, 180 (emphasis added). Any claim by Defendants that they did not have actual knowledge of Dr. Tyndall's abuse or propensity *supports* Plaintiff's negligence claims that Defendants failed to "investigate, supervise or monitor Dr. Tyndall to ensure the safety of the student-patients in their charge," institute "a reasonable system or procedure to investigate, supervise and/or monitor" Dr. Tyndall, and "adequately investigate, vet, and evaluate individuals for employment." FAC ¶¶ 87, 183, 217. Regardless, any such contention is a factual dispute that is improper at the pleading stage. As a result, Defendants' argument lacks merit.

6. ***Intentional Infliction of Emotional Distress: The FAC sufficiently alleges a claim for IIED.***

Defendants again argue that Ms. Doe failed to sufficiently allege that Defendants knew of Dr. Tyndall's abuse. As addressed fully above, Ms. Doe

- 17 -

repeatedly alleges that Defendants had notice and knowledge of Dr. Tyndall's unsuitability and prior abuse of patients.

### 7.    UCL: The FAC sufficiently alleges a claim for unfair competition under Business & Professions Code section 17200, et seq.

Under the Unfair Competition Law ("UCL"), "a practice is prohibited as 'unfair' or 'deceptive' even if it is not 'unlawful' or vice versa." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999) (internal quotes omitted). "Virtually any law can serve as the predicate for a Business and Professions Code § 17200 action; it may be civil or criminal, federal, state or municipal, statutory, regulatory, or court-made. . . It is not necessary that the predicate law provide for private civil enforcement. . . . [Business and Professions Code s]ection 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq." *Gafcon, Inc. v. Ponsor & Associates*, 98 Cal.App.4th 1388, 1425 n.15 (2002). Here, Ms. Doe alleged multiple statutory violations that serve as the predicate for her UCL claim, including Title IX, Education Code section 66270, and Civil Code sections 51, 1708.5, and 1573.

Further, Defendants' argument that common law accrual doctrines, such as delayed discovery and fraudulent concealment tolling, do not apply to UCL claims, is incorrect. *Aryeh v. Canon Business Solutions, Inc.,* 55 Cal.4th 1185, 1196 (2013) ("the UCL is governed by common law accrual rules to the same extent as any other statute").

### D.  Ms. Doe's claim for punitive damages is properly pled.

Defendants seek to strike Ms. Doe's claim for punitive damages on the grounds that it is prohibited without a prior court order and should be precluded as a matter of law. However, "Rule 12(f) of the Federal Rules of Civil Procedure does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.,* 618

F.3d 970, 975 (9th Cir. 2010). See also *Park v. Travelers Commercial Ins. Co.*, No. CV1401919RGKAGRX, 2014 WL 12597084, at \*1 (C.D. Cal., Apr. 21, 2014).

Further, motions to strike are generally disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005). Because Defendants' motion to strike is improper under Rule 12(f), it must be denied.

Substantively, "[f]ederal district courts have divided on whether [California Code of Civil Procedure] § 425.13 applies in federal court." *Estate of Prasad ex rel. Prasad v. County of Sutter,* 958 F.Supp.2d 1101, 1119 (E.D. Cal. 2013). Under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts are to apply state substantive law and federal procedural law." *Hanna v. Plumer,* 380 U.S. 460, 465 (1965). The weight of published decisions hold that section 425.13 is a procedural state statute and, therefore, does not apply in federal court. *Id.*; *Jackson v. E. Bay Hosp.*, 980 F. Supp. 1341, 1352 (N.D. Cal. 1997); *Burrows v. Redbud Cmty. Hosp. Dist.,* 188 F.R.D. 356, 361 (N.D. Cal. 1997); *Scalia v. County of Kern,* 308 F.Supp.3d 1064, 1091 (E.D. Cal. 2018).

*Jackson* held that section 425.13's requirement that a party obtain court approval prior to seeking punitive damages against a health care provider constitutes, in essence, a "method for managing or directing a plaintiff's pleadings, rather than a determination of substantive rights." 980 F.Supp. 1341, 1352 (N.D.Cal.1997) The *Jackson* court, relying on intermediate California appellate court rulings that section 425.13 is non-jurisdictional, waivable, and "procedural," concluded that section 425.13 "is not 'a central feature' of the [California] medical malpractice scheme." Accordingly, the *Jackson* court adjudged section 425.13 inapplicable since it is "essentially a method of managing or directing a plaintiff's pleadings, rather than a determination of substantive rights." *Id.*

///

**PLAINTIFF'S OPPOSITION TO USC'S AND THE BOARD'S
MOTION TO DISMISS AND TO STRIKE PUNITIVE DAMAGES CLAIMS**

Under *Jackson* and the majority of district court decisions, section 425.13 is a state procedural rule and, therefore, under its requirements, does not apply in federal court. Instead, the Federal Rules of Civil Procedure govern Ms. Doe's state law claim for punitive damages. Under Rule 8(a), a pleading need only contain "a short and plain statement of the claim" and "a demand for the relief sought." Fed.R.Civ.P. 8(a). Consequently, the plain meaning of Rule 8(a)(3) conflicts with section 425.13, making section 425.13 inapplicable in federal court. *Estate of Prasad ex rel. Prasad v. County of Sutter,* 958 F.Supp.2d 1101, 1121 (E.D.Cal. 2013).

As a result, Ms. Doe is not required to obtain permission from the Court when pleading punitive damages under section 425.13 for her state law claims.

**E. Should the Court find any merit to Defendants' Motion, Ms. Doe should be freely granted leave to amend.**

Rule 15 of the Federal Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires." Fed.R.Civ.P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.2003).

Thus, should the Court be inclined to dismiss any of Ms. Doe's claim, she respectfully requests leave to amend.

**V.    CONCLUSION**

For all the foregoing reasons, Ms. Doe respectfully requests that the Court deny Defendants' motion to dismiss and strike Ms. Doe's complaint.

Dated: March 18, 2019                    LAW OFFICES OF KEVIN T. BARNES

By:    */s/ Kevin T. Barnes*
Kevin T. Barnes, Esq.
Gregg Lander, Esq.
Attorneys for Plaintiff

**PLAINTIFF'S OPPOSITION TO USC'S AND THE BOARD'S
MOTION TO DISMISS AND TO STRIKE PUNITIVE DAMAGES CLAIMS**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I, the undersigned, am over the age of 18 years and not a party to this action. My business address is 1635 Pontius Avenue, Second Floor, Los Angeles, CA 90025-3361, which is located in Los Angeles County, where the service herein occurred.

On the date of execution hereof, I caused to be served the following attached document:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS UNIVERSITY OF SOUTHERN CALIFORNIA'S AND BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6), AND TO STRIKE PUNITIVE DAMAGES CLAIMS PER F.R.C.P. 12(f)**

on the interested parties in this action, addressed as follows:

| | |
|---|---|
| _Attorneys for Defendants University of Southern California and Board of Trustees of the University of Southern California:_ | _Attorneys for Defendant George Tyndall, M.D.:_ |
| Shon Morgan, Esq.<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017-2543<br>Tel: (213) 624-7707<br>Fax: (213) 624-0643<br>ShonMorgan@quinnemanuel.com | N. Denise Taylor, Esq.<br>Cherie L. Lieureance, Esq.<br>TAYLOR DEMARCO LLP<br>1000 Wilshire Boulevard, Suite 600<br>Los Angeles, CA 90017-2463<br>Tel.: (213) 687-1600<br>Fax: (213) 687-1620<br>DTaylor@taylordemarco.com |
| Stephen C. Fraser, Esq.<br>Alexander M. Watson, Esq.<br>FRASER WATSON & CROUTCH LLP<br>100 W. Broadway #650<br>Glendale, CA 91210<br>Tel: (818) 543-1380<br>Fax: (818) 543-1389<br>SFraser@fwcllp.com | _Attorneys for Plaintiffs:_<br><br>Joseph Tojarieh, Esq.<br>TOJARIEH LAW FIRM, PC<br>10250 Constellation Blvd., Ste. 100<br>Los Angeles, CA 90067<br>Tel: (310) 553-5533<br>Fax: (310) 553-5536<br>JFT@tojariehlaw.com |

using the following service method:

    **X   VIA ELECTRONIC SERVICE:** The above documents were electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the above interested parties.

I DECLARE under penalty of perjury that the foregoing is true and correct.

Executed on **March 18, 2019**, at Los Angeles, California.

_/s/ Cindy Rivas_
**Cindy Rivas**

- 1 -
PROOF OF SERVICE