Kevin T. Barnes, Esq. (#138477)
Gregg Lander, Esq. (#194018)
LAW OFFICES OF KEVIN T. BARNES
1635 Pontius Avenue, Second Floor
Los Angeles, CA 90025-3361
Tel.: (323) 549-9100 / Fax: (323) 549-0101
Email: Barnes@kbarnes.com

Joseph Tojarieh, Esq. (#265492)
TOJARIEH LAW FIRM, PC
10250 Constellation Boulevard, Suite 100
Los Angeles, CA 90067
Tel: (310) 553-5533 / Fax: (310) 553-5536
Email: JFT@tojariehlaw.com

Attorneys for Plaintiff JANE DOE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>        v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, a California Corporation, BOARD OF TRUSTEES OF THE UNIVERSITY OF SOUTHERN CALIFORNIA, an entity, form unknown; and GEORGE TYNDALL, M.D., an individual, and DOES 1 to 100, inclusive;<br><br>        Defendants. | Case No. 2:18-cv-09530 SVW (GJSx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT GEORGE TYNDALL, M.D.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Date: April 8, 2019**<br>**Time: 1:30 p.m.**<br>**Dept.: Courtroom 10A**<br><br>Honorable Stephen V. Wilson<br>Courtroom 10A<br><br>Action filed: November 9, 2018<br>Trial Date: None set |

///

///

///

- 1 -

**PLAINTIFF'S OPPOSITION TO DR. TYNDALL'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# Table of Contents

Page

I.    INTRODUCTION ................................................................. 1

II.   RELEVANT FACTS ............................................................ 2

III.  STANDARDS .................................................................... 4

    A.   Motion to Dismiss ..................................................... 4

IV.   ANALYSIS ...................................................................... 5

    A.   Ms. Doe's FAC is not barred by any statute of limitations. ......... 5

        1.   *Ms. Doe discovered her claims in 2018.* .................................. 5

        2.   *Defendant fraudulently concealed Ms. Doe's claims.* ............. 7

    B.   Unruh Act: The FAC states a claim for violation of Civil Code § 51. ............................................................... 10

    C.   Ms. Doe's inclusion of claims under Civil Code § 51.9 and § 52.4 was inadvertent. ............................................ 11

    D.   Bane Act: The FAC sufficiently alleges facts that Defendant interfered with Ms. Doe's rights through threat, intimidation, or coercion. ................................... 11

    E.   Sexual Assault and Battery: The FAC states facts on which relief may be granted for assault and battery. ................. 12

    F.   Constructive Fraud: The FAC sufficiently alleges a claim for constructive fraud against Dr. Tyndall. ................... 13

    G.   Intentional Infliction of Emotional Distress: The FAC sufficiently alleges a claim for IIED. ............................. 14

    H.   Negligent Infliction of Emotional Distress: The FAC sufficiently alleges a claim for NIED. ............................. 15

    I.   UCL: The FAC sufficiently alleges a claim for unfair competition under Business & Professions Code § 17200, et seq. .......................................................... 15

- i -

## <u>Table of Contents - Continued</u>

<u>Page</u>

**J.**   **Ms. Doe's claim for punitive damages is valid.** ........................... 16

**K.**   **Should the Court find any merit to Defendant's**

**Motion, Ms. Doe must be granted leave to amend.**.................... 17

**V.**   **CONCLUSION** ........................................................................... 17

**PLAINTIFF'S OPPOSITION TO DR. TYNDALL'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**c**

*Agarwal v. Johnson,*
   25 Cal.3d 932 (1979) ........................................................... 14

*Amen v. Merced County Title Co.,*
   58 Cal.2d 528 (1962) ............................................................. 9

*Andrews Farms v. Calcot, Ltd.,*
   693 F.Supp.2d 1154 (E.D. Cal. 2010) ................................... 13

*April Enterprises, Inc. v. KTTV,*
   147 Cal.App.3d 805 (1983) .................................................... 6

*Ashcraft v. King,*
   228 Cal.App.3d 604, (1991) ................................................. 13

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................... 4

*Beliveau v. Caras,*
   873 F.Supp. 1393 (C.D.Cal. 1995) ....................................... 11

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................... 4

*Burrows v. Redbud Cmty. Hosp. Dist.,*
   188 F.R.D. 356 (N.D. Cal. 1997) ......................................... 16

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
   20 Cal.4th 163 (1999) .......................................................... 15

*DeRose v. Carswell,*
   196 Cal.App.3d 1011 (1987) ................................................ 14

*Eminence Capital, LLC v. Aspeon, Inc.,*
   316 F.3d 1048 (9th Cir.2003) ............................................... 17

*Erie Railroad Co. v. Tompkins,*
   304 U.S. 64 (1938) ............................................................... 16

*Estate of Prasad ex rel. Prasad v. County of Sutter,*
   958 F.Supp.2d 1101 (E.D. Cal. 2013) ............................. 16, 17

*Fox v. Ethicon Endo-Surgery, Inc.,*
   35 Cal.4th 797 (2005) ..................................................... 5, 6, 7

*Gafcon, Inc. v. Ponsor & Associates,*
   98 Cal.App.4th 1388 (2002) ................................................ 15

*Hailey v. California Physicians' Service,*
   158 Cal.App.4th 452 (2007) ................................................ 15

*Hanna v. Plumer,*
   380 U.S. 460 (1965) ............................................................. 16

- iii -

**PLAINTIFF'S OPPOSITION TO DR. TYNDALL'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## Table of Authorities - Continued

Page

**Cases - Continued**

*Jackson v. E. Bay Hosp.,*
    980 F. Supp. 1341 (N.D. Cal. 1997)....................................................16, 17

*Jolly v. Eli Lilly & Co.,*
    44 Cal.3d 1103 (1988) ...................................................................6

*Kahle v. Gonzales,*
    474 F.3d 665 (9th Cir. 2007) ...........................................................5

*Kaplan v. Mamelak,*
    162 Cal.App.4th 637 (2008) .......................................................12, 13

*Mark K. v. Roman Catholic Archbishop,*
    67 Cal.App.4th 603 (1998) ..........................................................9, 10

*Migliori v. Boeing North American, Inc.,*
    114 F.Supp.2d 976 (C.D. Cal. 2000)...................................................10

*Moreno v. Sanchez,*
    106 Cal.App.4th 1415 (2003) ...........................................................6

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand,*
    6 Cal.3d 176 (1971) .....................................................................9

*Norgart v. Upjohn Co.,*
    21 Cal.4th 383 (1999) ...................................................................5

*Oppenheimer v. Southwest Airlines Co.,*
    No. 13-CV-260-IEG BGS, 2013 WL 3149483
    (S.D. Cal. June 17, 2013)...............................................................16

*Ovando v. County of Los Angeles,*
    159 Cal.App.4th 42 (2008) ..............................................................6

*Parsons v. Tickner,*
    31 Cal.App.4th 1513 (1995) .............................................................6

*Pashley v. Pacific Electric Railway Co.,*
    25 Cal.2d 226 (1944) ...............................................................5, 8, 9

*Plotnik v. Meihaus,*
    208 Cal.App.4th 1590 (2012) ..........................................................12

*Potter v. Firestone Tire & Rubber Co.,*
    6 Cal.4th 965 (1993) ...................................................................14

*Rutherford v. Rideout Bank,*
    11 Cal.2d 479 (1938) ....................................................................9

*Scalia v. County of Kern,*
    308 F.Supp.3d 1064 (E.D. Cal. 2018) .................................................16

- iv -

**PLAINTIFF'S OPPOSITION TO DR. TYNDALL'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## Table of Authorities - Continued

Page

**Cases - Continued**

*Sellery v. Cressey,*
    48 Cal.App.4th 538 (1996) ............................................................... 14

*So v. Shin,*
    212 Cal.App.4th 652 (2013) .............................................................. 12

*Spears v. City and County of San Francisco,*
    No. C 06-4968 VRW, 2008 WL 2812022
    (N.D. Cal., July 21, 2008) ................................................................. 12

*Stafford v. Shultz,*
    42 Cal.2d 767 (1954) .......................................................................... 8

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) .............................................................. 4

*Ward v. Westinghouse Canada, Inc.,*
    32 F.3d 1405 (9th Cir.1994) ............................................................... 6

*Wohlgemuth v. Meyer,*
    139 Cal.App.2d 326 (1956) ................................................................ 8

*Younan v. Equifax Inc.,*
    111 Cal.App.3d 498 (1980) ............................................................... 13

**Statutes**

Business & Professions Code § 17200 ...................................................... 15

Business & Professions Code § 17204 ...................................................... 15

California Code of Civil Procedure § 425 ........................................... 16, 17

Civil Code § 51 ............................................................................ 10, 11, 15

Civil Code § 52 ......................................................................................... 11

Civil Code § 1573 .................................................................................... 15

Civil Code § 1708 .................................................................................... 15

Federal Rules of Civil Procedure § 8 ....................................................... 17

Federal Rules of Civil Procedure § 12 ................................................. 4, 16

Federal Rules of Civil Procedure § 15 ..................................................... 17

**Other Authorities**

CACI No. 1301 ......................................................................................... 12

**PLAINTIFF'S OPPOSITION TO DR. TYNDALL'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**PLAINTIFF'S OPPOSITION TO TYNDALL'S MOTION TO DISMISS**

## I.    INTRODUCTION

Defendants University of Southern California ("USC") and USC's Board of Trustees (the "Board", and collectively, the "USC Defendants") hired a predatory physician, Dr. George Tyndall ("Dr. Tyndall" or "Defendant"), as the USC Defendants' sole, full-time gynecologist at the student health center. Dr. Tyndall used his position of confidence and power to sexually assault Plaintiff Jane Doe ("Ms. Doe") in 1991. For decades, the USC Defendants concealed Dr. Tyndall's pervasive sexual abuse and harassment of female patients, while Dr. Tyndall continued to prey on USC's young female student population.

When Dr. Tyndall's pervasive abuse finally came to light in 2018 in a newspaper article, Ms. Doe realized she had been betrayed and violated by the very institution that she once had much pride in, and the horrific reality of Dr. Tyndall's "medical care" set in. Ms. Doe brought this action, alleging claims against USC, its Board of Trustees, and Dr. Tyndall.

Defendant now brings this Motion to Dismiss to prevent Ms. Doe from having her day in court. Defendant's motion challenges Ms. Doe's complaint on several bases, most of which stem from Defendant's contentions that the statute of limitations has run and, incredibly, that sexual assault is not actionable on the civil rights, tort, and statutory theories alleged by Ms. Doe. First, Defendant's statute of limitations argument is meritless as Defendant's reprehensible conduct in actively hiding his misconduct estops him from benefitting from the concealment. Second, sexual assault indeed constitutes a deprivation of civil rights, battery, and unlawful discrimination. As a result, Defendant has failed to assert any meritorious argument regarding the sufficiency of Ms. Doe's claims.

Defendant also seeks to strike Ms. Doe's claim for punitive damages on the ground that Ms. Doe cannot pray for punitive damages without prior court order. This argument is unsupported by the weight of authority on this issue.

**PLAINTIFF'S OPPOSITION TO DR. TYNDALL'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Accordingly, because Defendant has failed to assert any basis on which to dismiss Ms. Doe's claims, his motion must be denied. However, if the Court is inclined to grant any part of Defendant's motion, Ms. Doe should be freely granted leave to amend the complaint.

## II.   RELEVANT FACTS

USC hired Dr. Tyndall in 1989 to work at its student health clinic as the sole full-time gynecologist. Ms. Doe's First Amended Complaint, Dkt No. 38 ["FAC"] ¶ 9. Over the span of three decades, or about sixty school semesters, Dr. Tyndall treated tens of thousands of female students, many of them teenagers seeing a gynecologist for the first time. FAC ¶ 9. Few, if any, of the young women who lay down on Dr. Tyndall's exam table at the student health center knew that he had been accused repeatedly of misconduct. FAC ¶ 9.

Such allegations included the claims that, while he worked, Dr. Tyndall would make unseemly comments, describing patients' skin as "flawless," "creamy" or "beautiful," according to multiple witnesses. FAC ¶ 14. He remarked on students' "perky breasts." "They stand right up there, don't they?" he was recalled as saying. FAC ¶ 14.

The allegations continued that, during some exams, Dr. Tyndall made explicit reference to sexual intercourse while his fingers were inside patients; for example, he would tell young ladies with their hymens intact: "Don't worry about it, your boyfriend's gonna love it." FAC ¶ 20.

Ms. Doe attended the University of Southern California from approximately 1990 to 1993.  FAC ¶ 1. As her complaint alleges, during the second semester of her freshman year at USC, in or about March of 1991, Ms. Doe was subjected to medical examination by Dr. Tyndall one time. FAC ¶ 4. As a result of this patient-physician relationship, Ms. Doe had a confidential, privileged, and/or fiduciary relationship with Defendant and placed her trust in Defendant. FAC ¶ 58.

During his medical examination of Ms. Doe, Dr. Tyndall molested, sexually

**- 2 -**

abused, and sexually harassed her, including but not limited to by an unnecessarily aggressive inspection of Ms. Doe's private parts. FAC ¶ 5. During the examination, Dr. Tyndall felt her breasts, put his fingers inside her vagina and anus, and aggressively moved first his fingers, and then a speculum around inside her. Dr. Tyndall also made grossly inappropriate remarks during his examination. FAC ¶ 5. For example, when Ms. Doe told Dr. Tyndall that she was having difficulty finding the string of her tampon, he remarked "You are such an idiot - don't you know it's not a black hole? Haven't you had sex before?" and words to that effect. FAC ¶ 6.

Dr. Tyndall misrepresented that his conduct was for a legitimate medical purpose and/or conformed to accepted medical practice. FAC ¶ 55. Dr. Tyndall concealed the existence of Ms. Doe's claims and the fact that Ms. Doe had a cause of action against Tyndall and/or USC at the time his sexual assaults occurred by misrepresenting that his conduct was for a legitimate medical purpose and/or conformed to accepted medical practice. FAC ¶ 55.

After years and years of Dr. Tyndall's outrageous sexual abuse of USC students, USC administrators allowed him to resign quietly with a financial payout in 2017. FAC ¶ 30. The terms of the deal included the offer that if Dr. Tyndall would agree to resign, he would be given a severance, and the conclusion of the USC investigation would be changed to "no finding." FAC ¶ 30.

Dr. Tyndall's resignation was effective June 30, 2017. USC did not inform Dr. Tyndall's patients. FAC ¶ 31. An October communication advised that Dr. Tyndall was "no longer with the University of Southern California." FAC ¶ 31. Dr. Tyndall renewed his California medical license in January 2018 and has been quoted as saying that he intends to work well into his eighties. FAC ¶ 33.

In 2018, Ms. Doe read a news article in the Los Angeles Times about Defendants USC, the Board, and Dr. Tyndall that brought forth the realization that she had been betrayed and violated by the very institution that she once had much

- 3 -

pride in, and the horror of the reality of Dr. Tyndall's "medical care" set in. FAC ¶ 7. As such, on November 9, 2018, Plaintiff Jane Doe filed her complaint asserting these allegations. A First Amended Complaint was filed and served on February 27, 2019. The FAC asserts 16 causes of action: (1) Violation of Title IX; (2) Unruh Act Violation (Civil Code § 51); (3) Sexual Harassment (Civil Code § 51.9); (4) Bane Act Violation (Civil Code § 52.1); (5) Gender Violence (Civil Code § 52.4); (6) Sexual Assault; (7) Sexual Battery (Civil Code § 1708.5); (8) Constructive Fraud (Civil Code § 1573); (9) Violation of Cal. Ed. Code § 66270; (10) Negligence; (11) Negligence Per Se; (12) Negligent Hiring, Supervision and Retention; (13) Negligent Failure to Warn; (14) Intentional Infliction of Emotional Distress (IIED); (15) Negligent Infliction of Emotional Distress (NIED); and (16) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200). Causes of action 5-7 are not asserted against Defendants USC or the Board.

On March 11, 2019, Defendant moved for an order dismissing the FAC as against him under Federal Rules of Civil Procedure, Rule 12(b)(6). Defendant also moves for "dismissal" of punitive damages. As set forth below in detail, Ms. Doe zealously opposes Defendant's motion. Further, even if the Court finds merit in Defendant's arguments, Ms. Doe should be allowed an opportunity to further amend her complaint to allege facts that the Court may find lacking.

## III.   STANDARDS

### A. Motion to Dismiss

Rule 12(b)(6) (failure to state a claim) provides that a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead affirmative factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and

**- 4 -**

matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Kahle v. Gonzales,* 474 F.3d 665, 667 (9th Cir. 2007).

## IV.   ANALYSIS

### A.   Ms. Doe's FAC is not barred by any statute of limitations.

A statute of limitations period begins to run when the cause of action accrues. *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal.4th 797, 806 (2005). Generally speaking, a cause of action accrues at "the time when the cause of action is complete with all of its elements." *Id., citing Norgart v. Upjohn Co*., 21 Cal.4th 383, 397 (1999) (internal quotations omitted). "An important exception to this general rule is the discovery rule which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal.4th at 807 (citing *Norgart,* 21 Cal.4th at 397). Similarly, a party's fraudulent concealment of facts giving rise to a cause of action will toll the statute of limitations until the facts are discovered by the plaintiff. *Pashley v. Pacific Electric Railway Co.,* 25 Cal.2d 226, 229-30 (1944). Because both the discovery rule and tolling for fraudulent concealment apply here, Ms. Doe's claims are timely, regardless of which statute of limitations applies.

### 1.   *Ms. Doe discovered her claims in 2018.*

Under the discovery rule, "[a] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." *Fox*, 35 Cal.4th at 807 (citing *Norgart,* 21 Cal.4th at 397). "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. *Id.*

The discovery rule "protects those who are ignorant of their cause of action through no fault of their own. It permits delayed accrual until a plaintiff knew or

- 5 -

should have known of the wrongful conduct at issue." *April Enterprises, Inc. v. KTTV,* 147 Cal.App.3d 805, 832 (1983); *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1112 (1988) ("When a plaintiff reasonably should have discovered facts for purposes of the accrual of a cause of action or application of the delayed discovery rule is generally a question of fact, properly decided as a matter of law only if the evidence … can support only one reasonable conclusion.") "[T]he question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discovery rule is a question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. County of Los Angeles,* 159 Cal.App.4th 42, 61 (2008); see also *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1408 (9th Cir.1994) ("Under California law, the question of when [the plaintiff] was on inquiry notice of potential wrongdoing is a factual question."); *Parsons v. Tickner,* 31 Cal.App.4th 1513, 1526 (1995) (noting that delayed discovery rule applies in two situations: (1) where it would be difficult for a plaintiff to understand the breach or the resulting injuries; and (2) where the parties have a confidential or fiduciary relationship). "Delayed accrual of a cause of action is viewed as particularly appropriate where the relationship between the parties is one of special trust such as that involving a fiduciary, confidential or privileged relationship." *Moreno v. Sanchez,* 106 Cal.App.4th 1415, 1424 (2003).

The accrual of a cause of action in relation to the discovery rule is typically **a question of fact**. *Fox*, 35 Cal.4th at 810. "A plaintiff whose complaint shows on its face that his [or her] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808. The court must take as true such allegations regarding delayed discovery, as well as whether any defect in pleading could be cured. *Id.* at 811.

Here, Ms. Doe did not discover her injuries until long after the wrongful acts occurred. FAC ¶ 7. Ms. Doe was not put on notice of her civil claims against

Defendants by the actions taken during her examination. At no point did anyone advise her that Dr. Tyndall's conduct was not medically appropriate or necessary. FAC ¶¶ 8, 56. At no point during or after her examination, until Ms. Doe read a newspaper article in 2018, did Defendants or anyone else advise her of Dr. Tyndall's prior violent and sexual mistreatment of other female patients. FAC ¶¶ 8, 56. Ms. Doe did not discover or suspect a factual basis for her claims prior to 2018, when she read a newspaper article entitled "A USC doctor was accused of bad behavior with young women for years. The University let him continue treating students," by Harriet Ryan, Matt Hamilton, and Paul Pringle, which was published on May 16, 2018, in The Los Angeles Times. FAC ¶ 7.

The nature of Ms. Doe's injuries and subsequent damages, and their causal relationship to Defendant's treatment of Ms. Doe, were not and could not have been discovered through reasonable care and diligence. FAC ¶ 58. Ms. Doe only became aware that her mistreatment by Dr. Tyndall constituted sexual battery, harassment, and assault, and/or gender-based violence in 2018, when she learned that her experience was not unique, and that other female patients of Dr. Tyndall had complained of his sex-based violence and misconduct. Until then, she did not have "a reason to at least suspect a factual basis" for her claims and did not have "information of circumstances to put her on inquiry" or an opportunity to obtain knowledge from sources open to her investigation, and could not have "made early discovery despite reasonable diligence." *Fox,* 35 Cal.4th at 807-08. Ms. Doe sufficiently sets forth facts regarding the time and manner of her discovery, as well as the inability to have made earlier discovery despite reasonable diligence.

### 2. *Defendant fraudulently concealed Ms. Doe's claims.*

"[T]he defendant, having by fraud or deceit concealed material facts and by misrepresentations hindered the plaintiff from bringing an action within the statutory period, is estopped from taking advantage of his own wrong." *Pashley,* 25 Cal.2d at 231. "Otherwise, in such cases, the defendant, by concealing his fraud,

- 7 -

would effectively block recovery by the plaintiff because of the intervention of the statute of limitations." *Id.* at 232.

"The same conclusion governs when the defendant under duty of disclosure has concealed known essential facts upon which to base a recovery against him and thereby has hindered the plaintiff from bringing his action until after the statute would otherwise have terminated the period of limitation... Whether in itself it is an actionable fraud or merely suffices to toll the statute on the original obligation, the breach of a duty to disclose known facts with the intention to and which does hinder commencement of an action until the action would be outlawed, is a fraud practiced upon the plaintiff which in conscience estops the defendant's reliance on the statute of limitations." *Pashley*, 25 Cal.2d at 232.

A doctor has such a duty of disclosure to his or her patient. *Pashley*, 25 Cal.2d at 235-36 (holding that doctors' failure to make full disclosure of plaintiff's injuries "excused his failure to seek knowledge from independent sources and his delay in commencing the action"); *Stafford v. Shultz,* 42 Cal.2d 767, 775-79 (1954) (holding complaint alleged sufficient facts to toll statute of limitations based on doctors' fraudulent misrepresentations and concealment). "The doctor-patient relationship is a fiduciary one and it is incumbent on the doctor to reveal all pertinent information to his patient.  The same is true of the hospital-patient relationship.  Withholding information would in a sense amount to misrepresentation." *Wohlgemuth v. Meyer,* 139 Cal.App.2d 326, 331 (1956). "[T]he disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action." *Pashley*, 25 Cal.2d at 235.

"Cases in which the defendant stands in a fiduciary relationship to the plaintiff are frequently treated as if they involved fraudulent concealment of the cause of action by the defendant. The theory is that although the defendant makes no active misrepresentation, this element is supplied by an affirmative obligation to

- 8 -

make full disclosure, and the non-disclosure itself is fraud." *Amen v. Merced County Title Co.,* 58 Cal.2d 528, 534 (1962) (citations and internal quotation marks omitted). This "prevents the fiduciary from obtaining immunity for an initial breach of duty by a subsequent breach of the obligation of disclosure." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 189 (1971).

"The injustice of allowing such fraud to become successful by reason of lapse of time and concealment is an injustice to the plaintiff, and it is precisely the same in effect and extent whether the fraud is that of the defendant or its agents." *Pashley*, 25 Cal.2d at 236. "The principal, having received the benefits of his agents' fraud, has no equity in his favor." *Lightner Mining Co.*, 161 Cal. at 703; *see also Rutherford v. Rideout Bank,* 11 Cal.2d 479, 483-84 (1938) (principal who puts agent in position to commit fraud upon third person is subject to liability for the fraud, even if agent acted solely for own purposes, principal is entirely innocent, and principal received no benefit from the transaction).

Here, Ms. Doe has properly alleged that Dr. Tyndall knew his examination of her was not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty, including gynecology or obstetrics. FAC ¶ 56. Despite this knowledge, Defendant affirmatively concealed his propensity to sexually abuse female patients and his past sexual abuse. As Ms. Doe's physician, Dr. Tyndall's concealment of the true facts induced Ms. Doe not to file suit promptly after she was subjected to his inappropriate conduct.  Defendant's reliance on *Mark K. v. Roman Catholic Archbishop*, 67 Cal.App.4th 603, 613 (1998), is misplaced. There, the court found that there was "no allegation …that the church concealed the fact of plaintiff's underlying injury." *Id.* Here, in contrast, Ms. Doe alleges that Defendant's actions included concealment of the impropriety of his examination, i.e., that Defendant concealed the fact of Ms. Doe's underlying injury. Accordingly, *Mark K.* does not help Defendant.

As a result of this intentional concealment, Ms. Doe sought medical

- 9 -

treatment with Defendant. Ms. Doe had a confidential, privileged, and/or fiduciary relationship with Dr. Tyndall. FAC ¶¶ 58, 59. Dr. Tyndall owed her a fiduciary duty to disclose all material facts relating to his conduct and treatment of her. Dr. Tyndall breached his fiduciary duty to Ms. Doe by failing to disclose that what he was doing to her was not medically necessary or appropriate. If Dr. Tyndall had complied with his fiduciary duty of disclosure, Ms. Doe would have realized she had a cause of action and would have promptly sued him and USC.  Dr. Tyndall's concealment of material facts misled Doe into believing that what he was doing was medically necessary and appropriate. FAC ¶ 59.

Although Defendant contends that Ms. Doe's claims were not tolled because Ms. Doe sensed that Dr. Tyndall's examination was improper, "suspicion of wrongdoing does not foreclose application of the fraudulent concealment doctrine." *Migliori v. Boeing North American, Inc.*, 114 F.Supp.2d 976, 984 (C.D. Cal. 2000). "[T]he question is not whether a plaintiff was on notice of some wrongdoing. Instead, the question is whether the plaintiff had knowledge of facts, or should have known about facts, that placed him or her on notice of the specific cause of action." *Id.*

Dr. Tyndall's concealment of the true facts induced Ms. Doe not to file suit promptly after she was subjected to his inappropriate conduct. Defendant precluded Ms. Doe from finding the facts that would give notice of her particular claims. Consequently, the statute of limitations was tolled for Ms. Doe's claims.

## B. Unruh Act: The FAC states a claim for violation of Civil Code § 51.

The Unruh Act prohibits discrimination based on a long list of protected characteristics, including sex, requiring all "business establishments of every kind whatsoever" to provide all persons with "full and equal accommodations, advantages, facilities, privileges, or services." Cal. Civ. Code § 51(b).

Defendant asserts that Ms. Doe fails to plead she was subject to unequal treatment based on her gender. To the contrary, Ms. Doe pleads she was subject to

sexual assault based on her gender. FAC ¶¶ 70-78. Sexual harassment is actionable under the Unruh Act. *Beliveau v. Caras,* 873 F.Supp. 1393, 1401 (C.D.Cal. 1995) ("[I]t is beyond question that sexual harassment is a form of discrimination").

**C. Ms. Doe's inclusion of claims under Civil Code § 51.9 and § 52.4 was inadvertent.**

Ms. Doe acknowledges that Civil Code § 51.9 and § 52.4 had not been enacted at the time of Dr. Tyndall's assault of her, and that these statutes do not appear to apply retroactively. During the parties' meet and confer process, Ms. Doe agree to dismiss these claims, and these claims *only*. However, Ms. Doe inadvertently filed the FAC without removing these claims. As a result, Ms. Doe does not oppose the dismissal of her third and fifth causes of action.

**D. Bane Act: The FAC sufficiently alleges facts that Defendant interfered with Ms. Doe's rights through threat, intimidation, or coercion.**

The Bane Act creates a private cause of action against anyone "who interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a), (b).

Defendant contends that "Plaintiff does not allege that Dr. Tyndall tried to [sic] or prevented plaintiff from exercising a civil right." This "argument borders on the frivolous." *Spears v. City and County of San Francisco*, No. C 06-4968 VRW, 2008 WL 2812022, at *13 (N.D. Cal., July 21, 2008). "The right to be free from sexual assault is guaranteed by California law." *Id.*

**E. Sexual Assault and Battery: The FAC states facts on which relief may be granted for assault and battery.**

"The essential elements of a cause of action for assault are: (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in

- 11 -

a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." *So v. Shin,* 212 Cal.App.4th 652, 668–69 (2013) (citing CACI No. 1301; *Plotnik v. Meihaus*, 208 Cal.App.4th 1590, 1603–04 (2012)).

"The essential elements of a cause of action for battery are: (1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching. *So*, 212 Cal.App.4th at 669 (citing CACI No. 1300; see *Kaplan v. Mamelak*, 162 Cal.App.4th 637, 645 (2008)).

Defendant first asserts that "Plaintiff does not plead facts showing Dr. Tyndall caused plaintiff to be or become apprehensive of harmful or offensive contact." To the contrary, Ms. Doe pleads that "Plaintiff was put in imminent apprehension of a harmful or offensive contact by Dr. Tyndall and actually believed Dr. Tyndall had the ability to make harmful or offensive contact with Plaintiff's person." FAC ¶ 112.

Defendant next contends that "[i]t is not even clear that plaintiff has pled a battery" because, Defendant argues, the "touching" was done with her consent. To the contrary, Ms. Doe alleges that she "consented to a routine examination that comported with the standards of the medical profession." FAC ¶ 4. Instead of the proper gynecological exam to which she consented, "Dr. Tyndall felt her breasts, put his fingers inside her vagina and anus, and aggressively moved first his fingers, and then a speculum around inside her." FAC ¶ 5.

///

**PLAINTIFF'S OPPOSITION TO DR. TYNDALL'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

"As a general rule, one who consents to a touching cannot recover in an action for battery… . However, it is well-recognized a person may place conditions on the consent. If the actor exceeds the terms or conditions of the consent, the consent does not protect the actor from liability for the excessive act." *Ashcraft v. King,* 228 Cal.App.3d 604, 609–610 (1991). Ms. Doe consented to a gynecological exam, not to sexual assault. Defendant may argue to the jury that this was the proper examination to which Ms. Doe consented; however, at this stage, Ms. Doe's allegations that "Plaintiff did not consent to Dr. Tyndall['s] intended harmful or offensive contact with Plaintiff's person, or intent to put Plaintiff in imminent apprehension of such contact" must be accepted as true. FAC ¶ 114; see *Kaplan v. Mamelak*, 162 Cal.App.4th 637, 647 (2008) (holding scope of consent to a medical procedure is a question for the trier of fact).

Accordingly, Plaintiff has sufficiently alleged claims for sexual assault and battery.

**F. Constructive Fraud: The FAC sufficiently alleges a claim for constructive fraud against Dr. Tyndall.**

"The elements for a cause of action for constructive fraud are fiduciary relationship, nondisclosure, reliance, and resulting injury." *Andrews Farms v. Calcot, Ltd.,* 693 F.Supp.2d 1154, 1166 (E.D. Cal. 2010) (citing *Younan v. Equifax Inc.,* 111 Cal.App.3d 498 (1980)).

Ms. Doe has alleged all these elements for constructive fraud against Defendant. First, she alleges that "Defendant Tyndall entered into a confidential, fiduciary and special relationship with Plaintiff when he undertook a physician-patient relationship with Plaintiff." FAC ¶ 129. She further alleges that Defendant failed to disclose his sexually abusive proclivities and the inappropriateness of his examination of Ms. Doe. FAC ¶¶ 130, 138, 140, 142. Ms. Doe also alleges that she relied on Tyndall's non-disclosure. FAC ¶¶ 134-135. Finally, Ms. Doe alleges that she was injured by this misconduct. FAC ¶¶ 150-151. Accordingly, Ms. Doe has

**- 13 -**

stated a claim for constructive fraud against Defendant.

### G. Intentional Infliction of Emotional Distress: The FAC sufficiently alleges a claim for IIED.

Intentional Infliction of Emotional Distress ("IIED") requires extreme and outrageous conduct with a reckless disregard of the probability of causing plaintiff's severe emotional distress. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993). "Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Agarwal v. Johnson*, 25 Cal.3d 932, 946 (1979).

Defendant contends that Ms. Doe has not alleged that Dr. Tyndall's conduct was "inappropriate" or that she suffered severe emotional distress. First, Ms. Doe alleges that Dr. Tyndall sexually assaulted her, which is extreme and outrageous conduct going beyond "inappropriate." See *DeRose v. Carswell*, 196 Cal.App.3d 1011, 1015, fn.6 (1987) (holding sexual assault is outrageous conduct (superseded by statute as acknowledged by *Sellery v. Cressey*, 48 Cal.App.4th 538, 544 (1996)). Second, Ms. Doe alleges that she "has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life…." FAC ¶ 201. Accordingly, this fulfills the requirement to plead a claim for IIED. See *Hailey v. California Physicians' Service,* 158 Cal.App.4th 452, 476-477 (2007) (holding the plaintiffs had sufficiently alleged a claim for IIED where they alleged they suffered "severe emotional distress, causing depression, anxiety, and physical illness").

**- 14 -**

**H. Negligent Infliction of Emotional Distress: The FAC sufficiently alleges a claim for NIED.**

Defendant challenges this claim solely on statute of limitations grounds. As explained in full above, Ms. Doe's claims were tolled and, as such, the claim for negligent infliction of emotional distress is timely.

**I. UCL: The FAC sufficiently alleges a claim for unfair competition under Business & Professions Code § 17200, et seq.**

Under the Unfair Competition Law ("UCL"), "a practice is prohibited as 'unfair' or 'deceptive' even if it is not 'unlawful' or vice versa." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999) (internal quotes omitted). "Virtually any law can serve as the predicate for a Business and Professions Code § 17200 action; it may be ""civil or criminal, federal, state or municipal, statutory, regulatory, or court-made. . . It is not necessary that the predicate law provide for private civil enforcement. . . . [Business and Professions Code s]ection 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq." *Gafcon, Inc. v. Ponsor & Associates*, 98 Cal.App.4th 1388, 1425 n.15 (2002). Here, Ms. Doe alleges multiple statutory violations that serve as the predicate for a UCL claim, including Civil Code §§ 51, 1708.5, and 1573.

Further, Ms. Doe has alleged that she suffered economic loss that was caused by Defendant's prohibited conduct. FAC ¶ 221; see Bus. & Prof. § 17204.

**J. Ms. Doe's claim for punitive damages is properly pled.**

"Because punitive damages are but a remedy, and thus neither constitutes a claim nor pertains to whether any claim has been stated, requests for punitive damages provide no basis for dismissal under Fed.R.Civ.P. 12(b)(6)." *Oppenheimer v. Southwest Airlines Co.*, No. 13-CV-260-IEG BGS, 2013 WL 3149483, at *4 (S.D. Cal. June 17, 2013). Because Defendant's motion to dismiss punitive damages is improper under Rule 12(b)(6), it must be denied.

- 15 -

Substantively, "[f]ederal district courts have divided on whether [California Code of Civil Procedure] § 425.13 applies in federal court." *Estate of Prasad ex rel. Prasad v. County of Sutter,* 958 F.Supp.2d 1101, 1119 (E.D. Cal. 2013). "[F]ederal courts are to apply state substantive law and federal procedural law" under the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938). *Hanna v. Plumer,* 380 U.S. 460, 465 (1965).

The weight of published decisions hold that § 425.13 is a procedural state statute and therefore does not apply in federal court. *Id*.; *Jackson v. E. Bay Hosp.*, 980 F. Supp. 1341, 1352 (N.D. Cal. 1997); *Burrows v. Redbud Cmty. Hosp. Dist.,* 188 F.R.D. 356, 361 (N.D. Cal. 1997); *Scalia v. County of Kern,* 308 F.Supp.3d 1064, 1091 (E.D. Cal. 2018).

*Jackson* held that § 425.13's requirement that a party obtain court approval prior to seeking punitive damages against a health care provider constitutes, in essence, "method for managing or directing a plaintiff's pleadings, rather than a determination of substantive rights." 980 F.Supp. 1341, 1352 (N.D.Cal.1997) The *Jackson* court, relying on intermediate California appellate court rulings that § 425.13 is non-jurisdictional, waivable, and "procedural," concluded that § 425.13 "is not 'a central feature' of the [California] medical malpractice scheme." Accordingly, the *Jackson* court adjudged § 425.13 inapplicable since it is "essentially a method of managing or directing a plaintiff's pleadings, rather than a determination of substantive rights." *Id.*

Under *Jackson* and the majority of district court decisions, California Code of Civil Procedure § 425.13 is a state procedural rule and, therefore, under its requirements do not apply in federal court. Instead, the Federal Rules of Civil Procedure govern Ms. Doe's state law claim for punitive damages rather than § 425.13. Under Rule 8(a), a pleading need only contain "a short and plain statement of the claim" and "a demand for the relief sought." Fed.R.Civ.P. 8(a). Consequently, the plain meaning of Rule 8(a)(3) conflicts with § 425.13, making §

**- 16 -**

425.13 inapplicable in federal court. *Estate of Prasad ex rel. Prasad v. County of Sutter,* 958 F.Supp.2d 1101, 1121 (E.D.Cal. 2013).

As a result, Ms. Doe is not required under § 425.13 to obtain permission from the court when requesting punitive damages for her state law claims against Defendant.

**K. Should the Court find any merit to Defendants' Motion, Ms. Doe must be granted leave to amend.**

Rule 15 of the Federal Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires." Fed.R.Civ.P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.2003).

Thus, should the Court be inclined to dismiss any of Ms. Doe's claim, she respectfully requests leave to amend.

**V.    CONCLUSION**

For all the foregoing reasons, Ms. Doe respectfully requests that the Court deny Defendant's motion to dismiss in its entirety.

Dated: March 18, 2019            LAW OFFICES OF KEVIN T. BARNES

By:    */s/ Kevin T. Barnes*
Kevin T. Barnes, Esq.
Gregg Lander, Esq.
Attorneys for Plaintiffs

**PLAINTIFF'S OPPOSITION TO DR. TYNDALL'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

      I, the undersigned, am over the age of 18 years and not a party to this action. My business address is 1635 Pontius Avenue, Second Floor, Los Angeles, CA 90025-3361, which is located in Los Angeles County, where the service herein occurred.

      On the date of execution hereof, I caused to be served the following attached document/s:

**PLAINTIFF'S OPPOSITION TO DEFENDANT GEORGE TYNDALL, M.D.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

      on the interested parties in this action, addressed as follows:

| *Attorneys for Defendants University of Southern California and Board of Trustees of the University of Southern California:* | *Attorneys for Defendant George Tyndall, M.D.:* |
|---|---|
| Shon Morgan, Esq.<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017-2543<br>Tel: (213) 624-7707<br>Fax: (213) 624-0643<br>ShonMorgan@quinnemanuel.com | N. Denise Taylor, Esq.<br>Cherie L. Lieureance, Esq.<br>TAYLOR DEMARCO LLP<br>1000 Wilshire Boulevard, Suite 600<br>Los Angeles, CA 90017-2463<br>Tel.: (213) 687-1600<br>Fax: (213) 687-1620<br>DTaylor@taylordemarco.com |
| Stephen C. Fraser, Esq.<br>Alexander M. Watson, Esq.<br>FRASER WATSON & CROUTCH LLP<br>100 W. Broadway #650<br>Glendale, CA 91210<br>Tel: (818) 543-1380<br>Fax: (818) 543-1389<br>SFraser@fwcllp.com | *Attorneys for Plaintiffs:*<br><br>Joseph Tojarieh, Esq.<br>TOJARIEH LAW FIRM, PC<br>10250 Constellation Blvd., Ste. 100<br>Los Angeles, CA 90067<br>Tel: (310) 553-5533<br>Fax: (310) 553-5536<br>JFT@tojariehlaw.com |

      using the following service method:

  **X**  **VIA ELECTRONIC SERVICE:** The above documents were electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the above interested parties.

I DECLARE under penalty of perjury that the foregoing is true and correct.

Executed on **March 18, 2019**, at Los Angeles, California.

                    */s/ Cindy Rivas*
                    **Cindy Rivas**