1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
     Michael E. Williams (Bar No. 181299)
3    michaelwilliams@quinnemanuel.com
     Shon Morgan (Bar No. 187736)
4    shonmorgan@quinnemanuel.com
     Tara Lee (Bar No. 204211)
5    taralee@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
7  Facsimile:   (213) 443-3100

8  FRASER WATSON & CROUTCH LLP
     Stephen C. Fraser (Bar No. 152746)
9    sfraser@fwcllp.com
     Alexander M. Watson (Bar No. 156828)
10   awatson@fwcllp.com
   100 W Broadway # 650
11 Glendale, CA 91210
   Telephone:  (818) 543-1380
12 Facsimile:   (818) 543-1389

13  *Attorneys for Defendants University of Southern California,*
14  *Board of Trustees of the University of Southern California*

15               **UNITED STATES DISTRICT COURT**

16              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 17  JANE DOE,<br><br>18<br><br>19               Plaintiffs,<br><br>20        v.<br><br>21  UNIVERSITY OF SOUTHERN<br>22  CALIFORNIA, a California<br>Corporation, BOARD OF TRUSTEES<br>23  OF THE UNIVERSITY OF<br>SOUTHERN CALIFORNIA, an entity,<br>24  form unknown; and GEORGE<br>TYNDALL, M.D., an individual, and<br>25  DOES 1 to 100, inclusive,<br><br>26               Defendants.<br><br>27<br><br>28 | Case No:  2:18-CV-09530-SVW-GJS<br><br>**REPLY IN SUPPORT OF DEFENDANT USC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6), AND TO STRIKE PUNITIVE DAMAGES CLAIMS PER F.R.C.P. 12(f); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:  Honorable Stephen V. Wilson<br>Dept.:   Courtroom 10A<br>Complaint Filed:  November 9, 2018<br>Trial Date:  None<br>Hearing Date: April 8, 2019<br>Hearing Time: 1:30 p.m. |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT ............................................................................................ 2

I.   THE FAC CANNOT OVERCOME THE STATUTE OF
     LIMITATIONS .................................................................................. 2

     A.   The "Discovery Rule" Does Not Apply Here. ......................... 2

     B.   The FAC Does Not Allege Facts Sufficient to Support a Theory
          of Fraudulent Concealment. ................................................... 4

          1.   Fraudulent Concealment Cannot Apply Because The FAC
               Admits that Plaintiff Was On Inquiry Notice Since 1991. .......... 4

          2.   The FAC Does Not Allege Fraudulent Concealment With
               the Requisite Particularity. ............................................... 6

          3.   The Opposition Does Not Dispute That Fraudulent
               Concealment Cannot Be Premised on the Same
               Underlying Facts as the Cause of Action Which Plaintiff
               Claims Was Concealed. ...................................................... 8

II.  THE FAC'S CONCLUSORY ALLEGATIONS OF NOTICE ARE
     INSUFFICIENT, PARTICULARLY IN LIGHT OF MORE SPECIFIC
     ALLEGATIONS PROVING OTHERWISE. ..................................... 9

     A.   The FAC Contains No Facts Supporting Notice Before The Early
          2000s. ..................................................................................... 9

          1.   Title IX (Claim 1). ........................................................... 10

          2.   Bane Act (Claim 4). .......................................................... 11

          3.   Constructive Fraud (Claim 8). ........................................... 12

          4.   Negligence (Claims 10-13). ............................................... 13

          5.   Intentional Infliction of Emotional Distress ("IIED")
               (Claim 14). ...................................................................... 14

          6.   Unfair Business Practices (Claim 16). ............................... 14

III. PLAINTIFF'S PUNITIVE DAMAGES CLAIMS SHOULD BE
     DISMISSED ..................................................................................... 15

     A.   The Motion to Dismiss Plaintiff's Punitive Damages Claims is
          Properly Brought. .................................................................. 15

REPLY IN SUPPORT OF MOTION TO DISMISS PER FRCP 12(b)(6) AND TO STRIKE PUNITIVE DAMAGES
CLAIMS PER FRCP 12(f)

B.    CCP § 425.13 Is a Substantive Right That Should Be Applied In Federal Court..........................................................................16

CONCLUSION..................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Woodford,*
No. 1:05-CV-01104-OWW-LJO, 2006 WL 1748587 (E.D. Cal. 2006)........16

*Amen v. Merced County Title Co.,*
58 Cal.2d 528 (1962) .................................................................................7

*Aryeh v. Canon Business Solutions, Inc.,*
55 Cal.4th 1185 (2013)..............................................................................14

*Austin B. v. Escondido Union Sch. Dist.,*
149 Cal.App.4th 860 (2007) ......................................................................11

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................2, 10

*Birdsong v. Apple, Inc.,*
590 F.3d 955 (9th Cir. 2009).....................................................................14

*Cal. Sansome Co. v. U.S. Gypsum,*
55 F.3d 1402 (9th Cir. 1995).......................................................................5

*Deirmenjian v. Deutsche Bank, A.G.,*
526 F. Supp. 2d 1068 (C.D. Cal. 2007).......................................................2

*DeRose v. Carswell,*
196 Cal.App.3d 1011 (1987) .......................................................................3

*Elias v. Navasartian,*
No. 1:15-cv-01567-LJO-GSA-PC, 2017 WL 1013122 (E.D. Cal.
2017).........................................................................................................16

*Fox v. Ethicon Endo-Surgery, Inc.,*
35 Cal.4th 797 (2005)............................................................................3, 4

*Grisham v. Philip Morris, Inc.,*
No. CV 02-7930 SVW RCX, 2009 WL 9102320 (C.D. Cal. Dec. 3,
2009)...........................................................................................................5

*Lisa M. v. Henry Mayo Newhall Mem'l Hosp.,*
12 Cal. 4th 291, 907 P.2d 358 (1995) .................................................11, 12

*M.P. v. City of Sacramento,*
177 Cal. App. 4th 121 (2009) ...................................................................12

*Malott v. Placer Cty.,*
No. 2:14-CV-1040 KJM EFB, 2014 WL 6469125 (E.D. Cal. Nov. 17,
2014).........................................................................................................11

*Mark K. v. Roman Catholic Archbishop,*
67 Cal. App. 4th 603 (1998).................................................................8, 9

*Mel v. Sherwood Sch. Dist.,*
No. 11-0987-AA, 2011 WL 13057295 (D. Or. Dec. 14, 2011) ....................10

*Migliori v. Boeing North American, Inc.,*
114 F.Supp.2d 976 (C.D. Cal. 2000).......................................................5, 6

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand,*
6 Cal.3d 176 (1971)....................................................................................7

-iii-

*Norgart v. Upjohn Co.*,
   21 Cal.4th 383 (1999)................................................................3, 4

*Oden v. Northern Marianas College*,
   440 F.3d 1085 (9th Cir. 2006)......................................................10

*Pashley v. Pacific Electric Railway Co.*,
   25 Cal.2d 226 (1944)..................................................................7, 8

*Rhodes v. Placer Cty.*,
   No. 2:09-CV-00489 MCE, 2011 WL 1302240 (E.D. Cal. Mar. 31,
   2011)............................................................................................16

*Rita M. v. Roman Catholic Archbishop*,
   187 Cal.App.3d 1453 (1986).........................................................5

*Sellery v. Cressey*,
   48 Cal.App. 4th 538 (1996)..........................................................3

*Shekarlab v. Cty. of Sacramento*,
   No. 218CV00047JAMEFB, 2018 WL 1960819 (E.D. Cal. Apr. 26,
   2018)............................................................................................16

*Sonbergh v. MacQuarrie*,
   112 Cal.App.2d 771 (1952)...........................................................3

*Stafford v. Shultz*,
   42 Cal.2d 767 (1954)....................................................................7

*Thomas v. Hickman*,
   No. CV F 06-0215 AWI SMS, 2006 WL 2868967 (E.D. Cal. 2006)...........16

*Ticer v. Young*,
   No. 16-CV-02198-KAW, 2018 WL 2088393 (N.D. Cal. May 4, 2018).......15

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010).................................................15, 16

*Wohlgemuth v. Meyer*,
   139 Cal.App.2d 326 (1956)...........................................................7

*Young v. Haines*,
   41 Cal.3d 883 (1986)....................................................................5

*Z.V. v. Cty. of Riverside*,
   238 Cal. App. 4th 889 (2015)......................................................12

## Statutory Authorities

Cal. Bus. & Prof. Code § 17200 ..............................................14

Cal. Civ. Proc. Code § 425.13 .................................................16

## Rules and Regulations

Fed. R. Civ. P. 9(b) ..............................................................7, 12

Fed. R. Civ. P. 12(b)(6) ............................................................15

Fed. R. Civ. P. 12(f) .................................................................15

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

The Opposition does not dispute that each of Plaintiff's claims, which stem from a 1991 medical visit, is facially barred by the applicable statutes of limitations. Instead, the Opposition seeks to rely on theories of delayed discovery and fraudulent concealment to delay accrual of Plaintiff's claims for 27 years. Neither of these theories can salvage Plaintiff's claims, in light of the allegations in the First Amended Complaint ("FAC"). The FAC concedes—and the Opposition does not dispute—that Plaintiff sensed at the time of that 1991 visit that she had just been the victim of inappropriate, wrongful—actionable—conduct by Dr. Tyndall. To wit, Plaintiff claims that Dr. Tyndall made "grossly inappropriate" comments, FAC ¶3, called her an idiot regarding her knowledge of her own anatomy, FAC ¶6, and "she sensed" that Dr. Tyndall's conduct was for his own personal gratification *at the time* of the exam. FAC ¶5.

This knowledge, or even a "suspicion of wrongdoing," put Plaintiff on inquiry notice and required her to investigate her claims at that time and file suit within the applicable limitations period. The delayed discovery rule cannot salvage the FAC's claims. Recognizing as much, the Opposition seeks to mischaracterize the standard for application of the discovery rule, arguing the limitations period did not begin until Plaintiff became aware of facts that would support every element of her claims against each defendant. This "every element" notion has been squarely rejected by the California Supreme Court.

Plaintiff's awareness of wrongful conduct in 1991 is also fatal to her fraudulent concealment theory. It is well-established that a plaintiff cannot rely on fraudulent concealment once the plaintiff is on inquiry notice of her injury, as Plaintiff here was in 1991. Moreover, the FAC fails to plausibly demonstrate that USC fraudulently concealed any known facts from Plaintiff.

1    The Opposition also cannot get around the FAC's allegations that USC was

2  not on notice of Dr. Tyndall's misconduct until the early 2000s, a decade after

3  Plaintiff's single visit with him.  The Opposition's request for discovery to support

4  these claims is fundamentally at odds with the Supreme Court's holding in *Bell Atl.*

5  *Corp. v. Twombly*, 550 U.S. 544, 556 (2007), which requires pleading "plausible

6  grounds" for relief before discovery is permitted.  USC's Motion should be granted.

7                                    **<u>ARGUMENT</u>**

8  I.    <u>THE FAC CANNOT OVERCOME THE STATUTE OF LIMITATIONS</u>

9    Defendants' Motion sets forth the various statutes of limitations pursuant to

10  which each claim asserted against USC is time-barred.  Mot. 3-13.  The Opposition

11  does not dispute the applicable limitations periods; rather, it attempts to invoke

12  exceptions to them through the application of the discovery rule or the doctrine of

13  fraudulent concealment.  Opp. 6-13.  These arguments are unavailing.

14                A.    <u>The "Discovery Rule" Does Not Apply Here.</u>[1]

15    As explained in the Motion, the discovery rule does *not* delay the accrual of a

16  claim once a plaintiff has a "suspicion of wrongdoing."  Mot. 7.  The Opposition

17  fails to address the FAC's allegations that during the exam, Dr. Tyndall made

18  "grossly inappropriate" comments, FAC ¶3, and Plaintiff "sensed that Dr. Tyndall's

19  examination was more about his own personal enjoyment than anything helpful for

20  her."  FAC ¶5.  These admissions confirm that Plaintiff had at least a "suspicion of

21  wrongdoing" in March 1991 and was on inquiry notice to further investigate any

22

23  ───────────────────

24    [1]   The Opposition does not dispute that in order to invoke the discovery rule, the FAC "must plead that, despite diligent investigation of the circumstances of the

25  injury, [] she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Deirmenjian v. Deutsche*

26  *Bank, A.G.*, 526 F. Supp. 2d 1068, 1092 (C.D. Cal. 2007).  Nowhere does the FAC "plead specific facts showing . . . [Plaintiff's] inability to have made earlier

27  discovery despite reasonable diligence."  *Id.*  The Opposition does not even attempt to claim otherwise.  This alone forecloses application of the discovery rule here.

28

potential claims stemming from this examination.[2]   The conclusory assertion that Plaintiff "was not put on notice of her civil claims against Defendants by what occurred during her examination," Opp. 8, is belied by the FAC's allegations to the contrary.   Indeed, given the nature of the claims alleged in the FAC, which carry with them an awareness of harm at the time of the wrongful act, reliance on the discovery rule is wholly misplaced.   *See DeRose v. Carswell,* 196 Cal.App.3d 1011, 1018 (1987) (finding delayed discovery rule did not apply to claims for assault and battery and IIED)[3]; *Sonbergh v. MacQuarrie,* 112 Cal.App.2d 771, 772-774 (1952) (limitations period for a battery accrues upon physical contact even though there is no observable damage at the time of contact).

Recognizing the delayed discovery rule does not apply here, the Opposition misstates the law, asserting that the discovery rule delays the accrual of claims until plaintiff has a "suspicion of one or more of the elements," coupled with "knowledge of any remaining elements."   Opp. 7.   The very case Plaintiff cites, *Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal.4th 797 (2005), makes plain that the statute of limitations is triggered not when the plaintiff is aware of all the legal elements of her claim, but rather as soon as plaintiff "ha[s] reason to suspect" any "wrongdoing":

> "*Norgart* explained that by discussing the discovery rule in terms of a plaintiff's suspicion of 'elements' of a cause of action, it was referring to the 'generic' elements of wrongdoing, causation, and harm…. In so using the term 'elements,' we do not take a hypertechnical approach to the application of the discovery rule. *Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action,*

---

[2]   As noted in the Motion, the FAC alleges that after Plaintiff read about Dr. Tyndall in the LA Times, she "experienced recurrences" of her injuries, FAC ¶151—which indicates that she was *previously aware* of her injury.   Mot. 9.   The Opposition does not respond to this point.

[3]   *DeRose*, which involved sexual assault against a minor, was later superseded by statute when the legislature amended the statute of limitations to allow for application of the delayed discovery rule to claims brought by minors.   *Sellery v. Cressey*, 48 Cal.App. 4th 538, 545-46 (1996).

*we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.*"

*Id.* at 807, *citing Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999) (emphasis added).  Put another way, the relevant inquiry is whether the plaintiff "'suspects . . . that someone has done something wrong to' [her], 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding.'" *Norgart*, 21 Cal.4th at 397-98 (internal citations omitted).

That Plaintiff was unaware of allegations by others of misconduct by Dr. Tyndall before 2018 is irrelevant to her claims.  She knew what happened to her in 1991, believed it was wrong at the time, and was on inquiry notice to investigate her claims.  Plaintiff's allegation that she was unaware that Dr. Tyndall's conduct during her exam may not have been medically necessary is also irrelevant to the delayed discovery inquiry.  The FAC admits that Plaintiff was aware in 1991 that Dr. Tyndall was not acting for a medical purpose but for his own personal gratification, and that his comments were "grossly inappropriate."  FAC ¶¶3, 5.  Because these allegations indicate Plaintiff's awareness or at least suspicion of Dr. Tyndall's alleged "wrongdoing," the statute of limitations began to run at the time of her exam and Plaintiff was required to investigate further.  *See Fox*, 35 Cal.4th at 807-808 ("plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation.").  The discovery rule has no application to the facts of this case.

    B.    <u>The FAC Does Not Allege Facts Sufficient to Support a Theory of Fraudulent Concealment.</u>

The Opposition also seeks to avoid the statutes of limitations by claiming fraudulent concealment.  This argument is unavailing for multiple reasons, as explained in USC's Motion, which the Opposition does not meaningfully address.

1.   <u>Fraudulent Concealment Cannot Apply Because The FAC</u>
<u>Admits that Plaintiff Was On Inquiry Notice Since 1991</u>.

The Opposition cannot overcome binding California law that "[t]he doctrine of fraudulent concealment for tolling the statute of limitations does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *Rita M. v. Roman Catholic Archbishop*, 187 Cal.App.3d 1453, 1460 (1986).   The Ninth Circuit and this Court have acknowledged the rule stated in *Rita M.*, explaining, "'Where fraud is established the statute is tolled only for as long as the plaintiff remains justifiably ignorant of the facts upon which the cause of action depends; *discovery or inquiry notice of the facts terminates the tolling*.'" *Grisham v. Philip Morris, Inc.*, No. CV 02-7930 SVW RCX, 2009 WL 9102320, at \*5 (C.D. Cal. Dec. 3, 2009) (emphasis in original), *citing, inter alia, Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1409 n. 12 (9th Cir. 1995).  Because the FAC establishes that Plaintiff was on inquiry notice of her claims as of March 1991, she cannot rely on fraudulent concealment to toll the statute of limitations as a matter of law.

For this reason as well, Plaintiff's reliance on complaints from other patients about Dr. Tyndall is misplaced.   Plaintiff did not need to know about others' experiences with Dr. Tyndall to know, in March 1991, that Dr. Tyndall's behavior toward her was wrong.  Her claims accrued at that time and the applicable statutes of limitations began to run. *See Young v. Haines*, 41 Cal.3d 883, 901 (1986) (concealment will not toll the limitations period if discovery has occurred).

The Opposition's only response is to quote, out of context, a readily distinguishable district court decision in *Migliori v. Boeing North American, Inc.*, 114 F.Supp.2d 976, 984 (C.D. Cal. 2000), for the proposition that "suspicion of wrongdoing does not foreclose application of the fraudulent concealment doctrine." Opp. 12.  But *Migliori* is not the law in California and is not binding on this Court.  And even *Migliori* recognized that "*discovery or inquiry notice of the facts*

-5-

*terminates the tolling*." *Migliori*, 114 F.Supp.2d at 984 (emphasis in original). *Migliori* is also premised on readily distinguishable facts.   In that case, the complaint alleged, in sum and substance, that "Boeing *monitored* its employees' exposure to radiation and *determined that it had exposed Migliori to excessive levels of radiation*[, but] Boeing did not inform Migliori about this excessive exposure [and instead] reassured Migliori that he was protected from overexposure to radiation." *Id.* at 979 (emphasis added).   The plaintiff was not aware that Boeing had exposed him to toxic levels of radiation until he developed cancer years later. In contrast, the FAC here acknowledges that Plaintiff was aware of wrongdoing at the time of Dr. Tyndall's exam.   FAC ¶5.   Plaintiff's alleged awareness of "grossly inappropriate" comments and improper touching motivated by Dr. Tyndall's personal gratification far exceeds the "hints, suspicions, hunches, or rumors" about exposure to toxic radiation that *Migliori* found was insufficient to constitute "notice" to a plaintiff.[4]   *Migliori* does not change California law: fraudulent concealment cannot toll the statute of limitations once the plaintiff has notice of a potential claim.

Because Plaintiff had a reasonable suspicion of her claims in 1991, she cannot, as a matter of law, rely on fraudulent concealment to delay accrual of the statute of limitations.

2.   The FAC Does Not Allege Fraudulent Concealment With the Requisite Particularity.

Although the Opposition concedes that fraudulent concealment requires pleading with particularity, Opp. 11-12, the FAC fails to meet this standard.   The Opposition acknowledges that fraudulent concealment requires that "the defendant under duty of disclosure has concealed <u>known</u> essential facts upon which to base a

---

[4]   Further, unlike the complaint in *Migliori*, the FAC here nowhere alleges that USC had any notice of the information which Plaintiff conclusorily alleges it concealed—as discussed *infra* in Section I.B.2.

recovery against him and thereby has hindered the plaintiff from bringing his action." Opp. 9 (emphasis added.)  The FAC, however, never alleges specific facts to support the claim that USC *knew* of any misconduct before (or indeed for a decade after) Plaintiff's 1991 examination by Dr. Tyndall.

The Opposition asserts: "Ms. Doe repeatedly alleges that, for over 25 years, Defendants knew of Dr. Tyndall's sexual assaults on his patients. E.g., FAC ¶ 56, 142." Opp. 12. But neither of these two cited FAC paragraphs actually alleges facts indicating that USC knew of Dr. Tyndall's alleged misconduct for over 25 years, or indeed for *any* specified period of time.  And generalized references that USC "knew" for decades without specific facts to support this claim fall far short of the heightened pleading requirements of Fed. R. Civ. P. 9(b). Despite multiple conclusory assertions, *e.g.*, Opp. 3,[5] the FAC contains no specific facts to support the argument that USC had the requisite notice for fraudulent concealment.[6]

_____

[5]    The Opposition, like the FAC, offers only vague, factually unsupported statements about USC's purported concealment: "For over two decades, USC concealed Dr. Tyndall's sexual abuse." Opp. at 3.

[6]  In this respect, the FAC is readily distinguishable from the various cases cited in the Opposition (at 9-10)—because they involve affirmative misrepresentations, which are not alleged here.  *See Pashley v. Pacific Electric Railway Co.*, 25 Cal.2d 226 (1944) (defendant railway's employee physicians affirmatively told plaintiff, who sustained injuries from glass splinters in his eyeball due to a negligently operated streetcar, that he should not go to any other physician—"for the purpose and with the intent of preventing the plaintiff from bringing an action within the statutory period of one year"—as a result of which plaintiff developed a cataract and blindness); *Stafford v. Shultz*, 42 Cal.2d 767 (1954) (defendant physicians, knowing that plaintiff's artery was damaged, falsely told plaintiff that only an artery branch was damaged, that there was no need to repair the artery, and that accumulated blood would be absorbed—as a result of which plaintiff's leg became infected and was amputated); *Wohlgemuth v. Meyer*, 139 Cal.App.2d 326 (1956) (doctors falsely assured decedent that her illness was correctly diagnosed and treated); *Amen v. Merced County Title Co.*, 58 Cal.2d 528 (1962) (defendant seller knew and hid from plaintiff buyer that a tax clearance certificate was offered by the state, affirmatively moving ahead with sale and causing plaintiff to owe substantially more in taxes); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176 (1971) (defendant attorneys failed to serve summons on behalf of plaintiff client, causing plaintiff to (footnote continued)

The Opposition also asserts that Dr. Tyndall's alleged fraudulent concealment should be imputed to USC for the purpose of tolling the limitations period for her claims against USC.  Opp. 10.  That is incorrect.  In support of this assertion, the Opposition cites to *Pashley v. Pacific Electric Railway Co.*, 25 Cal.2d 226 (1944)—a readily distinguishable case.  In *Pashley*, physician employees of the defendant railroad told the injured plaintiff not go to any other physician, to prevent him from learning about his injury and bringing an action within the statutory period of one year.  *Id.* at 228.  In deeming their fraudulent concealment imputed to the railroad, the *Pashley* court noted explicitly that "The agents' [(physicians')] alleged deceit was not intended for their own benefit, but for the pecuniary advantage of the defendant, their principal. … Thus its agents have employed the alleged deceit for the sole benefit of the defendant, and in such a case the facts must be deemed to be within the defendant's knowledge." *Id.* at 235.  That is patently not the case here.  To the contrary, the FAC alleges that, during the 1991 exam, Plaintiff "sensed that Dr. Tyndall's examination was … about *his own personal enjoyment*."  FAC ¶5 (emphasis added).  There is no allegation that Dr. Tyndall was concealing anything from Plaintiff for the benefit of USC.  Rather, the FAC alleges he was acting for his own personal benefit.  There is no basis for imputing any concealment by Dr. Tyndall to USC under these circumstances.

   3.   The Opposition Does Not Dispute That Fraudulent Concealment Cannot Be Premised on the Same Underlying Facts as the Cause of Action Which Plaintiff Claims Was Concealed.

Finally, as set forth in Defendants' Motion, Mot. 12-13, the law in California and the Ninth Circuit requires the factual basis for fraudulent concealment to be separate from the underlying cause of action concealed. *Mark K. v. Roman Catholic Archbishop*, 67 Cal. App. 4th 603, 613 (1998).  The Opposition does not dispute this lose the case, but continuing to misrepresent to plaintiff that the suit was still pending).

proposition of law or the fact that the FAC relies on the same allegations to support fraudulent concealment as it does to support the underlying claims against USC. The allegations in *Mark K.*, which the court found insufficient to invoke fraudulent concealment, are similar to those in the FAC.[7]  There, "Plaintiff assert[ed] that, as his fiduciary, the church had an obligation to disclose the [previous] accusations against Father Llanos and breached that duty by failing to come forward with this information." *Id.* at 613.  Here, Plaintiff asserts that as her fiduciary, the University had an obligation to disclose the previous accusations against Dr. Tyndall and breached that duty by failing to come forward with this information.  Just as in *Mark K.*, these allegations are insufficient to constitute fraudulent concealment.  *Id.* ("The wrongful conduct alleged against the church was its inaction in the face of the accusations against Father Llanos. Thus, what the church failed to disclose was merely evidence that the wrong had been committed. If plaintiff's approach were to prevail, then any time a tortfeasor failed to disclose evidence that would demonstrate its liability in tort, the statute of limitations would be tolled under the doctrine of concealment. Regardless of whether the issue is characterized as fraud by concealment or equitable estoppel, this is not the law.")

II.  <u>THE FAC'S CONCLUSORY ALLEGATIONS OF NOTICE ARE INSUFFICIENT, PARTICULARLY IN LIGHT OF MORE SPECIFIC ALLEGATIONS PROVING OTHERWISE.</u>

As set forth in USC's Motion, Mot. 14-23, the allegations in the FAC are not only insufficient to support Plaintiff's claims, they foreclose them altogether by

---

[7]   The Opposition seeks to distinguish *Mark K.*, by pointing to language that there was "no allegation … that the church concealed the fact of plaintiff's underlying injury," but that is no different than the allegations in the FAC.  The FAC does not allege that USC concealed the fact of Plaintiff's underlying injury to her, as is the case where courts have applied fraudulent concealment to toll the statute of limitations.  *See* fn. 6.

1   making plain that USC lacked notice of Dr. Tyndall's alleged misconduct prior to or
2   at the time of Plaintiff's alleged injury.

3        A.   <u>The FAC Contains No Facts Supporting Notice Before The Early</u>
4             <u>2000s.</u>

5        The FAC specifically alleges that it was not until the early 2000s that USC
6   was on notice of complaints against Dr. Tyndall for inappropriate comments and
7   touching.  FAC ¶ 12.  The Opposition does not contend otherwise.  Not does it
8   proffer other facts that could be alleged if leave to amend was granted that would
9   establish USC's notice by 1991, which is required for the claims against it.  Merely
10  incanting that USC "knew" or "had notice" cannot overcome these deficiencies.
11  And although the Opposition claims to provide references to "specific allegations"
12  regarding USC's notice (Opp. 13), it fails to deliver—citing instead to four
13  paragraphs of the FAC, *none* of which identify any specific dates or instances of
14  misconduct by Dr. Tyndall of which USC was purportedly aware by 1991.  Opp.
15  14.[8]

16        1.   <u>Title IX (Claim 1).</u>

17       Plaintiff agrees that Title IX requires a showing of actual knowledge and
18  deliberate indifference. Opp. 14, *citing Oden v. Northern Marianas College*, 440
19  F.3d 1085, 1089 (9th Cir. 2006).  But the FAC merely incants "actual knowledge"
20  and "deliberate indifference," without alleging any facts to support these assertions.
21  FAC ¶¶ 66, 67.  That is not enough to survive a motion to dismiss.  *See Twombly*,

22  _____

23  [8]   Though the Opposition repeatedly promises to point to evidence that the FAC
      alleges notice by USC, Opp. 11, 13-14, it falls flat.  Of the four FAC citations
24    referenced in the Opposition, the first three contain no specifics whatsoever (as to
      whom Dr. Tyndall purportedly abused, when it happened, when USC allegedly
25    knew, etc.), and the fourth provides only the vague reference that Dr. Tyndall
      allegedly engaged in misconduct "prior to Plaintiff's sexual abuse" (Opp. 21).  No
26    specific dates, no prior victims, and no specific prior incidents are identified.
      And even more importantly, the FAC states expressly that USC did not receive
27    complaints regarding Dr. Tyndall until the "early 2000s," FAC ¶12, which makes
      clear that more generalized allegations cannot establish notice by USC before then.
28

550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Mel v. Sherwood Sch. Dist.*, No. 11-0987-AA, 2011 WL 13057295, at *8 (D. Or. Dec. 14, 2011) (granting motion to dismiss student's § 1983 claim premised on violations of rights guaranteed by Title IX, where "the entirety of plaintiff's … claim asserted against the District is nothing more than a bare recitation of the requisite elements… [including] deliberate indifference").

Because the FAC's recitation of the elements of Title IX is conclusory and unsupported by factual allegations, this claim must be dismissed.

## 2. Bane Act (Claim 4).

The Opposition acknowledges that courts have applied the ordinary and common meaning to the "threats," "intimidation," or "coercion" required for liability under the Bane Act.  Opp. 15.  Nowhere does the FAC allege that USC engaged in any such acts; rather, it alleges that Plaintiff was sexually assaulted by Dr. Tyndall, not by his employer.  FAC ¶ 100.

It is not enough to argue that USC failed to prevent Dr. Tyndall from engaging in this conduct.  Given the violent nature of the conduct proscribed by the Bane Act, "there is no authority for imposing liability ... for failure to intervene." *Malott v. Placer Cty.*, No. 2:14-CV-1040 KJM EFB, 2014 WL 6469125, at *6 (E.D. Cal. Nov. 17, 2014) (dismissing Bane Act claim for failure to intervene with another police officer slamming a door on plaintiff's head, where "Plaintiff has not alleged… that the failure to intervene was or could be accompanied by the 'specified improper means (*i.e.*, threats, intimidation or coercion)' necessary to a Bane Act violation."), *citing Austin B. v. Escondido Union Sch. Dist.*, 149 Cal.App.4th 860, 883 (2007).  Here, the FAC does not allege any facts supporting the contention that USC somehow interfered with Plaintiff's rights though "threats,

-11-

intimidation or coercion."  At most, the FAC's allegations against USC constitute a failure to intervene—for which the Bane Act does not create liability.

The Opposition also argues that USC is vicariously liable for Dr. Tyndall's acts.  Opp. 15.  But the California Supreme Court has rejected this argument, holding that hospitals are not vicariously liable for sexual assaults committed by staff against patients, because such conduct is not within the scope of employment. *See, e.g.*, *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 907 P.2d 358 (1995) (holding that hospital was not vicariously liable for sexual assault by an ultrasound technician during a patient's examination).  The *Lisa M.* Court reasoned that employers could be vicariously liable for sexual assault only where the conduct was "generally foreseeable," and concluded that "the physically intimate nature of [defendant employee's] work" does *not* render sexual assault foreseeable.  *Id.* at 302-303. The Court stated: "*that a job involves physical contact is, by itself, an insufficient basis on which to impose vicarious liability for a sexual assault*. . . . To hold medical care providers strictly liable for deliberate sexual assaults by every employee whose duties include examining or touching patients' otherwise private areas would be virtually to remove scope of employment as a limitation on providers' vicarious liability." *Id*. (emphasis added).[9]

Because the FAC nowhere alleges that USC engaged in conduct proscribed by the Bane Act, and USC is not vicariously liable for Dr. Tyndall's conduct, Plaintiff's Bane Act claim should be dismissed.

---

[9]  Courts have extended the *Lisa M.* ruling, refusing to find the employer liable in the case of a social worker sexually assaulting a child, *see Z.V. v. Cty. of Riverside*, 238 Cal. App. 4th 889, 893 (2015), or in the case of a sexual assault by a firefighter, *see M.P. v. City of Sacramento*, 177 Cal. App. 4th 121, 130–32 (2009). In both instances, courts relied on the *Lisa M.* reasoning to conclude that the sexual assaults at issue were not within the scope of employment.

### 3.    Constructive Fraud (Claim 8).

The Opposition does not dispute that constructive fraud—like any fraud claim—must be alleged with particularity. Fed. R. Civ. P. 9(b).  As detailed in the Motion, Mot. 17-18, the FAC does not meet this standard.  The Opposition claims that Plaintiff has made "general allegations" that "Defendants had notice since the beginning of Dr. Tyndall's tenure at USC. E.g., FAC ¶¶ 56, 185." Opp. 16.  But general allegations, unsupported by facts, does not satisfy Rule 9(b).

Moreover, the cited paragraphs (FAC ¶¶  56, 185) do not even support the "general allegations" that Defendants had notice since the beginning of Dr. Tyndall's tenure at USC.  These paragraphs do not assert any facts regarding when USC was on notice of Dr. Tyndall's alleged misconduct.[10]  Indeed, the *only* paragraphs in the FAC which contain specifics as to USC's notice allege that USC "received notice of Dr. Tyndall's misconduct in 'the early 2000s.'" Opp. 16, citing FAC ¶ 12.  In light of these specific allegations that USC received notice in the early 2000s, the FAC cannot establish USC was on notice for purposes of a constructive

---

[10]    FAC ¶56 does *not* assert that USC had notice since the beginning of Dr. Tyndall's tenure, or indeed since any other specific time, stating only:

"All Defendants knew that Dr. Tyndall's examinations were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or gynecology or obstetrics. Defendants, and each of them, affirmatively concealed Dr. Tyndall's propensity to sexually abuse female patients and his past sexual abuse. Defendants had extensive and detailed knowledge of Dr. Tyndall's history of pervasive and violent misconduct. Defendants took no action regarding prior complaints against Dr. Tyndall and continued to allow him to treat female patients despite knowledge of his misconduct and unsuitability."

The same is true of FAC ¶185:

"Defendants were put on notice, knew and/or should have known that Dr. Tyndall had previously engaged and continued to engage in unlawful sexual conduct with student-patients, and had previously and was continuing to commit other felonies, for his own personal sexual gratification, and that it was, or should have been foreseeable that Dr. Tyndall was engaging, or would engage in illicit sexual activities with Plaintiff and others, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendants."

fraud claim in 1991 at the time of Plaintiff's examination.  This claim must be dismissed as well.

### 4.    Negligence (Claims 10-13).

The FAC's failure to adequately allege USC had notice of Dr. Tyndall's alleged misconduct as of 1991 is also fatal to the multiple negligence-based causes of action (Claims 10-13).  The conclusory assertion that USC "should have known" of Dr. Tyndall's unfitness prior to Plaintiff's examination, Opp. 17, is belied by the allegations in the FAC that USC only received notice of complaints in the early 2000s.  FAC ¶12.  Contrary to the Opposition's argument, Opp. 17, the fact that USC lacked the requisite knowledge at the time of Plaintiff's examination is *not* a "factual dispute"—it is plainly alleged in the FAC itself.

### 5.    Intentional Infliction of Emotional Distress ("IIED") (Claim 14).

The absence of allegations establishing earlier notice by USC is likewise fatal to the FAC's IIED claim.  This claim also fails because USC lacked the knowledge necessary at the time of Plaintiff's examination to support a claim of intentional conduct towards the Plaintiff, as is required for this claim.

### 6.    Unfair Business Practices (Claim 16).

Because the underlying claims are time-barred and fatally deficient, as explained above, Plaintiff's Unfair Business Practices claim premised on these claims fails as well.  Without a predicate violation, the FAC does not establish "unlawful" behavior by USC.  And as explained in the Motion, USC cannot have committed an "unfair" or "fraudulent business act" against Plaintiff, given that USC lacked the requisite notice for § 17200 liability. *See* Mot. 22-23.[11]

---

[11]    The Opposition cites *Aryeh v. Canon Business Solutions, Inc.,* 55 Cal.4th 1185, 1196 (2013) for the proposition that the UCL is subject to accrual rules, including the discovery rule.  Opp. 18.  The Motion sets forth contrary case law, which remains the law of the Ninth Circuit, Mot. 13, despite a later California Supreme Court ruling.  In any event, even if the UCL may be subject to this accrual doctrine, for the reasons set forth above in Section I.A, the FAC fails to meet the (footnote continued)

-14-

III.   PLAINTIFF'S PUNITIVE DAMAGES CLAIMS SHOULD BE DISMISSED

    A.   The Motion to Dismiss Plaintiff's Punitive Damages Claims is Properly Brought.

Because California law prohibits the assertion of punitive damages against a health care provider absent a prior court order, Mot. 23-25, USC has moved to dismiss Plaintiff's punitive damages claims—for which she has not obtained prior court approval.   The Opposition's attempt to derail this motion on procedural grounds is unavailing.

The Opposition's reliance on *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970, 975 (9th Cir. 2010) is misplaced.   *Whittlestone* stands for the proposition that courts may not dispose of claims for damages in a *standalone* motion to strike per Rule 12(f).   But that is not the motion at issue.   Instead, USC has chosen to file a combined motion, pursuant to both Rules 12(b)(6) and 12(f), which states explicitly that Plaintiff's "[p]unitive [d]amages claims should be *dismissed*." Mot. 23 (emphasis added).   Indeed, just as *Whittlestone* suggests, motions to dispose of damages claims which are precluded as a matter of law are "suited for a Rule 12(b)(6) motion." *Whittlestone*, 618 F.3d at 974; *see also Ticer v. Young*, No. 16-CV-02198-KAW, 2018 WL 2088393, at *11 (N.D. Cal. May 4, 2018) ("To the extent that the defendant asserted that the claim had to be stricken because such damages were precluded as a matter of law, the Ninth Circuit found that this should have been raised in a … motion to dismiss…"), *citing Whittlestone, Inc.*, 618 F.3d at 975.   That is precisely what USC has done here, by including its argument regarding punitive damages in its motion to dismiss.

By bringing this motion under *both* Rules 12(b)(6) and 12(f), USC has also complied with the policy rationale underpinning the *Whittlestone* rule.   *See Whittlestone*, 618 F.3d at 974 (standalone Rule 12(f) motion was not proper vehicle

standard for the discovery rule, which does not delay the accrual of any of the claims asserted against USC, including Plaintiff's § 17200 claim.

to dispose of punitive damages claims because allowing such motions would "creat[e] redundancies within the Federal rules of Civil Procedure, because a Rule 12(b)(6) motion … already serves such a purpose").   By bringing a combined motion under both Rules 12(b)(6) and 12(f), USC has avoided any such "redundancy" in motion practice.[12]

> **B.**   **CCP § 425.13 Is a Substantive Right That Should Be Applied In Federal Court.**

As set forth in the Motion, multiple federal courts in California have held that CCP § 425.13 is applicable in federal court.  Mot. 24-25.  The Opposition addresses none of these cases,[13] opting instead only to demonstrate that the Motion correctly noted that federal courts are divided on the subject.  Mot. 25, no. 10.  For the reasons discussed in the Motion, application of CCP § 425.13 is appropriate here.

---

[12]    In any event, courts may "construe such… motions to strike as motions to dismiss and analyze them accordingly." *See Rhodes v. Placer Cty.*, No. 2:09-CV-00489 MCE, 2011 WL 1302240, at *20 (E.D. Cal. Mar. 31, 2011), *report and recommendation adopted,* No. 2:09-CV-00489-MCE, 2011 WL 1739914 (E.D. Cal. May 4, 2011) (construing defendant's motion to strike punitive damages per CCP § 425.13 as a motion to dismiss in light of the holding in *Whittlestone*).

[13]    *See Elias v. Navasartian*, No. 1:15-cv-01567-LJO-GSA-PC, 2017 WL 1013122, at *16 (E.D. Cal. 2017); *Thomas v. Hickman*, No. CV F 06-0215 AWI SMS, 2006 WL 2868967, at *40 to *41 (E.D. Cal. 2006); *Allen v. Woodford*, No. 1:05-CV-01104-OWW-LJO, 2006 WL 1748587, at *21 (E.D. Cal. 2006).  *See also Rhodes*, 2011 WL 1302240, at *21(Section 425.13 is applicable because plaintiff's punitive damages claims arise from state law claims); *Shekarlab v. Cty. of Sacramento*, No. 218CV00047JAMEFB, 2018 WL 1960819, at *4 (E.D. Cal. Apr. 26, 2018) (finding § 425.13 to be intimately bound to state substantive law and therefore a substantive and not a procedural rule, and there being no direct conflict between Section 425.13 and federal rules, Section 425.13 is applicable in federal court).

## <u>CONCLUSION</u>

For the above reasons, USC respectfully requests that the Court dismiss all claims asserted against USC.  Additionally, USC requests that the Court strike any requests for punitive damages based on any remaining claims asserted against USC.

DATED:  March 25, 2019

| | |
|---|---|
| FRASER WATSON & CROUTCH, LLP | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| By: _/s/ Stephen C. Fraser_ | By: _/s/ Michael E. Williams_ |
| STEPHEN C. FRASER<br>ALEXANDER M. WATSON<br>DANIEL K. DIK | JOHN B. QUINN<br>MICHAEL E. WILLIAMS<br>SHON MORGAN<br>TARA LEE |
| Attorneys for Defendants,<br>The University of Southern California, Board of Trustees of the University of Southern California | Attorneys for Defendants,<br>The University of Southern California, Board of Trustees of the University of Southern California |